## CHICAGO, ROCK ISLAND & TEXAS RAILWAY COMPANY v. ROSA LANGSTON.

### No. 675. Decided May 25, 1899.

**1. Argument of Counsel—Evidence Raising Issue—Inference.**

Rule 39, requiring counsel to confine their argument "to the evidence and to the arguments of opposing counsel" is violated when an attorney, over objection made, is permitted to argue an issue of fact which there is no evidence sufficient to raise, though his argument consists in inferences sought to be drawn from the record and testimony in the case. (Pp. 711-713.)

**2. Same.**

See opinion for argument of counsel, excepted to, but permitted by the trial judge, presenting a case in which a judgment for large, if not excessive damages, found by the Court of Civil Appeals to have been probably affected by the objectionable course of argument, should be set aside. (Pp. 711-713.)

**3. Same.**

Permitting an improper course of argument was ground for reversal unless it appeared that the party complaining was not prejudiced thereby. (Pp. 713, 714.)

**4. Prejudicial Error—Law or Fact—Findings on Appeal—Query.**

Questioned, whether a finding by the Court of Civil Appeals that an argument affected the verdict be treated as one of fact, binding on the Supreme Court, or of law, such as arises upon the admission of improper evidence. (Pp. 713, 714.)

**5. Expert Testimony—Examination of Person.**

Where, as a witness, a plaintiff seeking recovery for injuries to the person voluntarily exhibits the injuries to the jury, defendant is entitled to have such medical experts as he may himself select examine the injured members for the purpose of testifying. (Pp. 710, 714, 715.)

**6. Same.**

It was error to refuse to medical experts selected by defendant the privilege of examining injured limbs which plaintiff had voluntarily exhibited to the jury, though they were physicians in defendant's employ and the right of examination was denied them on that ground by plaintiff, who, at the same time, consented to an examination by disinterested physicians selected by the court. (Pp. 710, 714, 715.)

CERTIFICATE OF DISSENT from the Court of Civil Appeals for the Second District, in an appeal from Montague County.

This case, on appeal from a judgment of the District Court, was on November 26, 1898, reversed and remanded, in accordance with the opinion of a majority of the Court of Civil Appeals delivered by STEPHENS, A. J., from which HUNTER, A. J., dissented and filed a dissenting opinion. A motion for rehearing was overruled on December 31, 1898, in a written opinion for the majority of the court, by STEPHENS, A. J., HUNTER, A. J., dissenting, as before.

The points of dissent were on the same day certified to the Supreme Court as follows:

"This day came on to be heard the motion of appellee to certify to the Supreme Court the point of dissent herein, which having been heard and considered by the court, is granted. It is therefore ordered that the opinion of the majority reversing the judgment and remanding the cause, with the findings of fact it contains, as well as the dissenting opinion of Justice Hunter, and the further opinion on motion for rehearing, be also certified; from which opinions this point of dissent will appear, and which, briefly stated, is, whether or not there was reversible error in the court's refusal, upon the objection or objections set out in the bill of exceptions copied in that opinion, and after appellee had exhibited her wounded limbs to the court and jury, to permit an examination thereof by Drs. Saunders and Reily, or either of them, to enable them to give to the jury their opinions as experts upon the question of her ability to use artificial limbs. We further order of our own motion that the question raised by the twelfth assignment of error, which is also involved in the dissent, as will appear from the above dissenting opinion of Justice Hunter and that of the majority in overruling the motion for rehearing, that is, whether there was reversible error in permitting the argument of counsel complained of in this assignment and quoted in appellant's brief on pages 48 and 49, be certified to the Supreme Court for decision, upon the issues and findings set forth in the opinions of the majority and more fully stated in the briefs, which with certified copies of all the opinions are ordered sent up with the certificate, and also the transcript."

The opinion of the majority of the Court of Civil Appeals, with the dissenting opinion, and the opinion of the majority on motion for rehearing, will appear in 19 Texas Civil Appeals Reports (47 Southwestern Reporter, 1027, 48 Id., 610), to which reference is made for fuller statement of the points of dissent here passed upon.

*Graham & Turner* and *J. M. Chambers*, for appellant.

*C. B. Randell* and *W. W. Wilkins*, for appellee.—The proceedings to have appellee's injured limbs examined by Drs. Saunders and Riley, or either of them, can not be sustained by appellant as an absolute right, or on any inherent power of the court to compel appellee to submit to the examination without her consent. Railway v. Rice, 33 N. E. Rep., 953; Railway v. Newmeyer, 28 N. E. Rep., 860; Railway v. Brunker, 128 Ind., 554; McQuigan v. Railway, 14 Law. Rep. Ann., 466; Railway v. Botsford, 141 U. S., 250; Roberts v. Railway, 29 Hun, 154; Railway v. Griffin, 80 Fed. Rep., 282; Lyon v. Railway, 37 N. E. Rep., 113; Page v. Page, 51 Mich., 88; Belle of Nelson Co. v. Riggs, 45 S. W. Rep., 99; Railway v. Pendery, 36 S. W. Rep., 793; Parker v. Enslow, 102 Ill., 272.

Appellee had the legal right to exhibit her limbs to the jury, which

*1899.]*      C. R. I. & T. Ry. Co. v. Langston.      **711**

she did without objection, and she did not thereby surrender any other right. Railway v. Carroll, 31 S. W. Rep., 132; Roberts v. Railway, 29 Hun, 155; Hiller v. Sharon Springs, 28 Hun, 344; Mulhado v. Railway, 30 N. Y., 370; Railway v. Botsford, 141 U. S., 250.

It is nowhere shown in the record that an examination of appellee's limbs was necessary to appellant's defense, or that such examination was imperatively demanded to meet the ends of justice. Railway v. Norfleet, 78 Texas, 324; Railway v. Nelson, 24 S. W. Rep., 590; Railway v. Johnson, 72 Texas, 101; Railway v. Underwood, 64 Texas, 463; Belle of Nelson Co. v. Riggs, 45 S. W. Rep., 100; Railway v. Michaels, 46 Pac. Rep., 938.

If the right to have the examination made, without appellee's consent, existed in any event, such right could only be exercised by an appointment by the court of disinterested persons to make the examination. Railway v. Johnson, 72 Texas, 101; Railway v. Nelson, 24 S. W. Rep., 590; Railway v. Berling, 37 S. W. Rep., 1086; Smith v. Spokane, 47 Pac. Rep., 888; Railway v. Botsford, 141 U. S., 250; Stuart v. Havens, 22 N. W. Rep., 421.

The right, if any, to have appellee's limbs examined without her consent, which we deny, rested in the sound discretion of the trial court, and there is nothing in the record tending to show that the trial judge, who observed every phase of the trial, abused such discretion. Belle of Nelson Co. v. Riggs, 45 S. W. Rep., 100.

The demand by appellant that appellee should submit to an examination of her limbs by Drs. Saunders and Riley was fully and fairly met by appellee's repeated offer to submit to an examination by any number of impartial physicians, appointed by the court, not in the employment of or connected with either party, and by the court deemed competent. Railway v. Underwood, 64 Texas, 463; Railway v. Norfleet, 78 Texas, 324.

DENMAN, Associate Justice.—Rosa Langston having recovered against the Chicago, Rock Island & Texas Railway Company verdict and judgment for $25,000, as damages for the crushing of both her feet by the wheels of the company's cars as she was attempting to board the train as a passenger, and the Court of Civil Appeals, one of its justices dissenting, having on appeal by the company reversed the judgment, the two questions of dissent have been certified to this court for determination pending a motion for rehearing made in the Court of Civil Appeals by Rosa Langston.

One question of dissent is whether the majority erred in holding that the cause should be reversed on account of certain language used by the counsel for Rosa Langston in his opening argument to the jury, as follows: "Gentlemen of the jury, this is an unequal contest,—this poor woman on one side and this powerful corporation on the other. I say that the evidence shows that it is an unequal contest. Look at the array of witnesses on one side that came here for the railway com-

pany, and the number that came for Mrs. Langston. We allege in our petition that the train crew was drunk. There was enough testimony in this case to raise the issue. It don't seem to me that the men could have been sober and gave no attention to the passenger cars and passengers in the cars. It was a grave charge made upon the conductor and his underlings. They knew the charge had been made, and the attorneys of the railway company knew the charge had been made, and they didn't open their mouths about it. The man who run that engine was charged with being drunk and didn't deny it. There were some depositions taken in this case by the notary who had testified in this case—questions propounded by the defendant and crossed by the plaintiff, and the answers written down, sworn to by the witnesses and certified to by Mr. Collier, that never found their way into this courthouse. Who is responsible for that I do not know. I hope no lawyer in this case. It was not the proper thing to do. Gentlemen of the jury, when these depositions were taken, if it was found by anybody who had any authority in the matter that they were against the defendant, it was their duty to let them be returned to the court, filed here as testimony in this case, to be used by the plaintiff if she saw proper to use them, even if the defendant did, on these depositions, lose the case. But they disappeared Where they went to I do not know. I don't know who was responsible for them, whether it was the agents of the railway company or the notary public, and I don't believe it was the lawyers. But they are gone. Those depositions were against the defendant; otherwise they would be on file here today to be read to you. We were entitled to them, but we did not get them. That poor woman who sits there with her limbs cut off, helpless as she is, was entitled to those depositions to be used for whatever they were worth; but you can't get them. They are gone. Collier testified that he took them, but no explanation is made of their absence. They are unaccounted for. Nothing more is said about them by the defendant. When he testified that they hadn't been returned to the court, they didn't attempt to explain it away. Nothing more was said about it. They ought not to have done this poor woman that way; they ought to have given her a fair chance. This is almost a death struggle for her. If there is anything in her favor, let her have the benefit of it. Don't take it away. Don't rob the grave. Give her a fair show." The bill of exceptions, duly reserved, shows that this language was duly excepted to at the time it was used by counsel for the railway on the ground that it "was calculated to leave a false impression on the minds of the jury as to the duty and liability of the defendant, to arouse their prejudice against defendant, and elicit their sympathy in behalf of the plaintiff," and that the trial court overruled the exception. In passing upon the question, the majority of the Court of Civil Appeals state, (1) that all the members of that court agree that the issue of drunkenness on the part of the train crew was not presented by the evidence; (2) that the verdict, if not excessive, which they were not then prepared to hold, was exceptionally large; (3) that that

part of the argument with reference to drunkenness was clearly unauthorized by law and in violation of our rule 39, which provides that "counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel," and (4) that "there is little room for doubt, in view of the preponderance of the evidence against the verdict, the very large sum allowed as damages, and the almost irresistable appeal alike to sympathy and prejudice permeating the entire argument complained of, that the violation of rule 39 was to appellant's prejudice.    *    *    *    The argument which, taken altogether, presented to the jury in burning words the plea of a poor afflicted woman against a powerful corporation running  its passenger train through the country with a drunken crew, thereby making her a miserable cripple for life, and then suppressing the testimony to prevent her recovery of damages—thus blending what was put in issue by the evidence with what was not—could not, we think, have been without prejudice to appellant.    *    *    *    The approval by the court of that course was itself probably prejudicial, coupled with the circumstances that there was enough, when so skillfully handled by counsel, in the testimony of Thomas about his vague impressions" (as to the conductor's drinking)—"not sufficiently definite and tangible, however, to amount to evidence of any fact—to raise a damaging suspicion in the minds of the jury."

As we understand the dissenting opinion, it does not contend that there was any evidence raising the issue of drunkenness or that the remarks of counsel with reference thereto were justified in law, but that it does contend that the judgment should not be reversed therefor, for the reason that the learned judge could not see "that any harm could have resulted from this part of the opening speech, and, if so, it was easily answered and easily turned against the side using such assertions and inferences for argument."

We agree with the Court of Civil Appeals that there was no evidence raising the issue of drunkenness, and that therefore under the law expressed in the rule above quoted counsel had no right to argue the question before the jury, and that the trial court erred in permitting him to do so over objection of the company.    Unless it can be said that this error did not prejudice the company, it was in law entitled to have the judgment reversed therefor.    As seen above, the majority of the Court of Civil Appeals have not only been unable to say that no injury resulted but have gone further and found that "there is little room for doubt" that the company was prejudiced thereby.    This is, in effect, a finding that the verdict was in all probability induced by and based in part upon the unauthorized argument.

If this finding, deduced as it is from all the circumstances in the record, be one of fact, this court has no jurisdiction to revise it, and consequently has no jurisdiction to determine the real question of dissent, i. e., whether the jury were probably influenced by the improper remarks.    But assuming that the question as to whether the company

was probably prejudiced by the argument is one of law similar to that arising when improper evidence has been admitted, can we say as a matter of law—as we must in order to hold that the majority of the Court of Civil Appeals erred in reversing therefor—that the error of the trial court in permitting the argument over objection of defendant was not prejudicial to it? We think not. The objectionable argument was calculated to arouse and influence the jury in favor of the plaintiff and must be held to have been so intended by counsel, that being the very purpose of argument and he having made it over the protest of the defendant. The action of the trial court in permitting it under the circumstances was in effect a permit to the jury to consider it. An unusually large verdict followed. The Court of Civil Appeals, whose jurisdiction is final, seems to have had great difficulty in not holding it excessive in and of itself. In fact they seem to have considered that it was as large as they could have sustained under the evidence if the trial had been in every respect unobjectionable. Now, the verdicts of juries are not as a rule subject to this serious charge of straining the evidence. The argument being unauthorized by law and calculated to influence the verdict, the jury being warranted by the action of the trial court in considering it, and the verdict being upon the very verge of being excessive and without support in the evidence, we can not say that the majority of the Court of Civil Appeals were in error in refusing to hold that defendant was not prejudiced by the argument and in reversing the cause by reason thereof.

Having had some doubt as to whether the question of dissent above discussed was one of law or fact, and being of opinion that if it were the latter we would have no jurisdiction of this cause, as no opinion of ours on the other question could result in setting aside the judgment of reversal rendered by the Court of Civil Appeals, we deemed it proper to first consider that question, and having reached a conclusion in accord with that of a majority of the Court of Civil Appeals thereon which must result in permitting their said judgment to stand, we deem it unnecessary to determine the other question of dissent.

### ON MOTION FOR REHEARING.

GAINES, Chief Justice.—When we disposed of the questions submitted upon certificate of dissent in this case, we were of opinion that the majority of the court correctly held that the language of counsel of the appellee upon the argument before the jury was a ground for a reversal of the judgment; and we are still of that opinion. We thought, however, that a ruling upon the other question was not necessary to a decision of the case, and therefore declined to answer it. Counsel for the appellee in their motion for a rehearing urgently insist upon an answer to the other question, and we have reached the conclusion that in view of another trial the question ought to be determined. When we answered the second question, we were inclined to think that the

majority of the court were right upon both, and we are now of that opinion. Our conclusion is that both questions should be answered in the affirmative and our opinion will be so certified. Except for the purpose of answering the first question certified, the motion for a re-hearing is overruled.

Opinion delivered May 25, 1899.