KIRBY LUMBER CO. v. YOUNGBLOOD
(No. 135.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 25, 1917.)

1. TRIAL ⟨⟩350(1)—SUBMISSION OF QUESTIONS—PROPRIETY—GOOD FAITH OF JURY.

When, on the trial of a cause, each issue raised by the pleadings and the evidence is submitted in plain and intelligent questions, which cannot be misunderstood, and, when necessary, appropriate instructions are given to guide the jury in determining their answers, it is not error to refuse to submit questions having their object to test the good faith of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828.]

2. EVIDENCE ⟨⟩317(9)—HEARSAY.

In an action by the employé of a lumber company for injuries received while unloading logs from cars, testimony that the engineer of the log train, after plaintiff was injured, while the engineer was holding a log on the car to keep it from coming off, stated that he told a third party to put a bunk spike in place, and that he failed to do it, was inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1182.]

3. WITNESSES ⟨⟩414(2) — CORROBORATION—FORMER STATEMENTS.

Testimony that witness had on a prior occasion made a statement to a certain person was inadmissible; it being improper to permit plaintiff to bolster up the testimony of such witness by showing by the witness prior statements consistent with his testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1288.]

4. WITNESSES ⟨⟩380(5) — INCONSISTENT STATEMENTS—IMPEACHING OWN WITNESS—SURPRISE.

Plaintiff did not have the right to impeach his own witness by showing inconsistent statements, or to lay a predicate for his impeachment, where plaintiff was not surprised by the witness' testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1214, 1219.]

5. MASTER AND SERVANT ⟨⟩274(2)—INJURIES TO SERVANT — EVIDENCE — CONTRIBUTORY NEGLIGENCE.

In an action by an employé of a lumber company for injuries, testimony that plaintiff just before unloading the log car, the work in which he was injured, had drunk about a pint of whisky, was admissible on the issue of contributory negligence, also as proper to be considered as bearing on the weight of plaintiff's testimony as to his conduct on the occasion.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 941.]

6. TRIAL ⟨⟩133(5)—ARGUMENT OF COUNSEL—WITHDRAWAL—ADMONITION BY COURT.

In an action for injuries by an employé of a lumber company, plaintiff's counsel, in his closing argument to the jury, stated in substance that it did not matter so much who was technically at fault, whether plaintiff or defendant, as the big corporations using men to make their wealth should give up part of their

wealth to an injured employé. The court admonished counsel that he should keep within the record, and that the argument was improper. *Held*, that the making of the argument was reversible error, despite the court's admonition and counsel's withdrawing his remarks and stating in effect that plaintiff relied solely on his legal rights.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316.]

7. DAMAGES ☞132(1)—PERSONAL INJURIES —EXCESSIVE VERDICT.

Where a lumber company's employé, an able-bodied man in the prime of life, because of his injuries had been practically deprived of any means of support by manual labor, his sight and hearing having been badly injured, while he had been caused to stutter, and could not use his right arm, which had withered, his right leg being almost useless, verdict for $15,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 372.]

*Appeal from District Court, Jefferson County; E. A. McDowell, Judge.*

Suit by Henry Youngblood against the Kirby Lumber Company. From a judgment for plaintiff, defendant appeals. Judgment reversed, and cause remanded.

Andrews, Streetman, Burns & Logue, of Houston, and W. G. Reeves and Oliver J. Todd, both of Beaumont, for appellant. Stanley Thompson, of Houston, and Howth & Adams, of Beaumont, for appellee.

DAVIS, J. Appellee instituted this suit in the district court of Jefferson county to recover damages in the sum of $30,000 for injuries to his person received by him while engaged in the work of unloading logs from log cars of appellant, Kirby Lumber Company, on January 5, A. D. 1912, at Evadale, Jasper county, Tex.

It is alleged, in substance, by appellee, that appellant, Kirby Lumber Company, at the time appellee received his injuries, was engaged in the manufacture and sale of lumber, and as a part of its business owned, and operated a train or railroad engine and cars, for the purpose of hauling and transporting logs from the woods to its sawmill; that appellant was careless and negligent in failing to furnish and equip one of said cars with the necessary and proper bunk spikes, or that, having equipped said car with bunk pikes, one of the bunk spikes had been lost or broken, and that said bunk spike had remained out for an unreasonable length of time, and that appellant knew, or by the use of ordinary care could have known, that said bunk spike was out; that the bunk spikes were placed on the log cars for the purpose of holding the logs on the car, so that, when the toggle chain was knocked loose, the bunk spikes would be a means of safety in assisting in the safe and proper removal of the logs from the car; that in the absence of the bunk spikes, when the toggle chain was released, all of the logs would suddenly slide from the car, and in this in-

stance did do so, unexpectedly to appellee, and not in the usual and customary way, thereby injuring appellee while he was engaged in the faithful performance of his duty, and without any negligence on his part, and without his knowledge that a bunk spike was missing, and that by the use of ordinary care he would not have discovered, in the required rush of the work to be performed, that a bunk spike was missing.

Appellant, in answer to this charge, pleaded general denial, contributory negligence, and assumed risk.

The case was submitted on special issues, and the jury found thereon as follows:

(1) "Was one of the bunk spikes out of or missing in the car in question, on the side next to the rollway, at the time of and before plaintiff was injured? Answer: Yes."

(2) "Was the failure to have said bunk spike in the car negligence on the part of defendant and its authorized agents? Answer: Yes."

(3) "Was such negligence the direct and proximate cause of plaintiff's injuries? Answer: Yes."

(4) "Did plaintiff, Henry Youngblood, have actual knowledge that said bunk spike was out of or missing in the car at the time of and before his injury? Answer: No."

(5) "In performing his own duties or employment, and in using ordinary care in performing them (if he did so), would plaintiff necessarily have discovered that said bunk spike was out before he was injured? Answer: No."

(6) "In performing his own duties, and assuming that he used ordinary care in performing them (if he did so), was the fact (if you have found it to be a fact) that said bunk spike was missing open, obvious, and visible to plaintiff? Answer: No."

(7) "Was the risk and danger of the logs coming from off the cars without force being applied thereto when the toggle chains were unloosened a risk and danger ordinarily incident to the work in which Henry Youngblood was engaged, even when the bunk spikes were in the cars? Answer: No."

(8) "If Henry Youngblood unloaded the car in question one or more times immediately preceding the day he was injured with the bunk spike missing therefrom, must he necessarily have discovered and known that said bunk spike was missing? Answer: No."

(9) "Was plaintiff guilty of contributory negligence in taking a position outside of the duck holes in performing the work of loosening the toggle chains and unloading said car, or in being in such position while doing said work that he could not reach said holes for his protection against the falling logs? Answer: No."

(10) "Did plaintiff stand and remain in the way and path of said logs without taking reasonable precautions under all the circumstances for his own safety? Answer: No."

(11) "Was plaintiff guilty of contributory negligence in failing and omitting to observe the manner in which the logs were loaded and secured on said car, or in failing and omitting to observe how and in what manner said logs were likely to roll or descend from said car when the toggle chains thereon should be unloosened? Answer: No."

(12) "Was plaintiff guilty of contributory negligence in failing to observe whether there was a bunk spike out of said car? Answer: No."

(13) "Did plaintiff in unloosening the toggle chains, and in unloading said car, fail to take such precautions for his safety as were proper

and reasonable under all of the circumstances? Answer: No."

(14) "Was plaintiff's failure, under all the circumstances, to observe and discover that said bunk spike was missing, negligence on his part? Answer: No."

(15) "Was plaintiff guilty of contributory negligence in failing to stoop while knocking the toggle chain or in failing to stoop or duck down by or beneath the skid after having knocked the toggle chain, so that the log would go above him without injuring him? Answer: No."

(16) "What amount of money paid now will compensate plaintiff for the injuries he has sustained? Answer: $15,000."

The evidence is sufficient to sustain the findings of the jury, as shown by said questions and answers thereto; and we think the learned trial judge did not err in refusing to give the peremptory instruction requested by appellant, defendant below, and in refusing to give the special instructions and special issues requested by appellant.

[1] Each issue raised by the pleadings and the evidence was submitted to the jury in plain and intelligent questions, which could not have been misunderstood, and, when necessary, appropriate instructions were given to guide the jury in determining their answers thereto; and when this is done in the trial of a case, it is not error to refuse to submit such questions, which have for their object either the formation of a Chinese puzzle or to test the good faith of the jury.

This disposes of appellant's assignments of error from 1 to 37, inclusive, which relate to the action of the trial court in giving or refusing special charges or special issues, and that the jury were manifestly wrong in answering the questions submitted to them as they did.

The thirty-eighth assignment urges that the court erred in permitting the plaintiff to prove by the witness Willie Cruse, over the objection of defendant, that the engineer of the train, T. Wilson, after the plaintiff was injured, while the said T. Wilson was holding a log on the car to keep it from coming off, stated to witness the following:

"I told Big Boy [referring to B. C. Wilson] to put a bunk spike in here, and he failed to do it."

The question of negligence on the part of appellant, defendant below, was a close question in the trial of this case, and this testimony, no doubt, strongly influenced the jury in determining the question of negligence on the part of the defendant.

[2] It appears that this testimony was admitted on the theory that it was a part of the res gestæ. We think the admission of this testimony was error, and because of the peculiar condition of this case was material error. The same was hearsay, and does not come within any exception to the established rule excluding hearsay testimony. The evidence shows that T. Wilson did not see the accident and did not know of it until after the plaintiff had been hurt, and the declara-

tion offered in evidence was made after the accident occurred.

The rule is:

"The declarations of the agent are only admissible as to matters within the scope of his authority, and only as to transactions then going on, and not as to past events."

In the case of G., C. & S. F. Ry. Co. v. Southwick several witnesses testified in the trial of the case that just after the accident, in the depot, and at the place of accident, just after plaintiff was brought in, the conductor (Taylor) stated:

"I told those people that those stools would yet be the death of some one."

Judge Pleasants, in passing on this question in the case, says:

"Any opinion Taylor may have expressed to the company about the stools used by the company was not competent evidence tending to show that the stools were either safe or unsafe implements. Nor was the declaration by the witness, at the time of the injury to the deceased of what he may have said to the company on a previous occasion any part of the res gestæ." G., C. & S. F. Ry. Co. v. Southwick, 30 S. W. 592; I. & G. N. Ry. Co. v. Ragsdale, 67 Tex. 25, 2 S. W. 515; Verry v. Railway Co., 47 Iowa, 549; 1 Taylor, Ev. (7th Eng. Ed.) 602; Railway v. Brisco, 42 Tex. Civ. App. 321, 100 S. W. 989.

Appellant's thirty-ninth assignment of error urges that the court erred in permitting plaintiff's attorney, over objection, after said attorney had asked the witness B. C. Wilson the following portion of a question, to wit: "I will ask you if you didn't tell Mr. Gene Hartnett, to whom you made a statement"—to ask said witness the remainder of said question, to wit, "in which you stated that your brother had told you to put in those bunk spikes a couple of days before this accident, and that you had neglected to do it." It is often the case that the answer of the witness makes the question asked his testimony. Suppose the witness had answered the question, "Yes;" then he adopted the question asked as his answer, and it would have been equivalent to the witness making the statement, "I told Mr. Gene Hartnett that my brother told me to put in those bunk spikes a couple of days before this accident, and that I had neglected to do it."

[3, 4] The evidence that the witness had on a prior occasion made a statement to Gene Hartnett was inadmissible, and it was error to permit plaintiff to bolster up the testimony of his own witness by showing by the witness prior consistent statements; nor did the plaintiff have the right to either impeach the witness by showing inconsistent statements, or to lay a predicate for his impeachment, for there is nothing in the record to show that the plaintiff was surprised by the testimony of the witness.

[5] The fortieth assignment urges that the trial court erred in refusing to allow appellant to prove by the witness B. C. Wilson, on cross-examination, that the plaintiff, on the morning when he sustained his injuries,

just before he was unloading the log car, had drunk about a pint of whisky. We think this was error, for the reason such fact was proper to be considered by the jury in passing upon the question whether or not the plaintiff at the time he received his injury was guilty of contributory negligence, and for the further reason that such fact was proper to be considered by the jury as bearing upon the weight of the testimony given by the plaintiff as to his conduct upon the occasion in question.

In the case of Alexander v. Humber the Supreme Court of Kentucky say:

"The admission of evidence tending to show that the appellants were more or less intoxicated at the time the injury was inflicted is not, therefore, open to question. If it were, however, it was unquestionably competent. The issue was whether the appellants were guilty of neglect. Intoxication ordinarily deprives one of the same power to exercise caution as when sober. It will hardly be claimed that, if one were injured by neglect in the movement of a locomotive, it would not be competent to show that the engineer in charge of it at the time was intoxicated."

See, also, Cyc. vol. 23, p. 61, note 30; volume 29, p. 534, note 44; Alexander v. Humber, 86 Ky. 565, 6 S. W. 454; Hughes v. Chicago, etc., Ry. Co., 150 Iowa, 232, 129 N. W. 956.

[6] The forty-first assignment urges that this cause should be reversed because one of plaintiff's counsel, in his closing argument to the jury, stated to the jury, in substance, "that his idea was that in these cases it did not matter so much who was technically at fault, whether the plaintiff or the defendant, that these big corporations ought to pay a man working for them for the loss he has sustained, and that, if these corporations used these men to make their wealth, they should give up part of their wealth to the injured employé, to compensate him for the injury," and which argument was objected to at the time, and the trial court admonished said attorney that he should in his argument, keep within the record, and that the argument was improper, whereupon the said attorney replied "that, while he differed with the court, he would nevertheless comply with the ruling of the court," and thereupon proceeded to say to the jury, substantially "that the jury could not find for the plaintiff on the theory that the defendant was a corporation, nor upon the theory that the man was injured while serving the corporation in the work out of which they make their profits, and that this was true, no matter what he, or anybody else, thought of it, but that the jury would have to be governed by the law, and they could not find for the plaintiff unless it was shown by the plaintiff by a preponderance of the proof that the company was at fault, as defined in the court's charge, and that he did not base his recovery upon the mere fact that the plaintiff was an injured employé and the defendant a corporation, for whom he was serving at the time of his injury, but upon higher ground, and that is that the plaintiff was in the performance of his duty, using due care for his own safety, and that the injury occurred entirely by the negligence of the defendant," and which argument is before us for review by a proper bill of exception.

It is clear from the statements made by plaintiff's counsel that he could have no other object in view than to arouse the passion and prejudice of the jury. The argument was not based upon any evidence adduced upon the trial. It is true the trial judge admonished said attorney "that he should in his argument keep within the record, and that the argument was improper"; but when the seeds of passion and prejudice are sown and fall in fallow ground, it is difficult, indeed, to destroy its effect, even by the most careful admonition and painstaking instructions; and when counsel, either in their argument to the jury or during the trial, in the presence of the jury, go outside of the record, and indulge in remarks that are clearly intended to arouse the passion or prejudice of the jury, and likely to influence them, such conduct not only authorizes, but requires the trial court to set aside the verdict of the jury, and this should be done, even though the court may have instructed the jury to disregard such argument. Rules 39 and 41, District Court (142 S. W. xx); Railway Co. v. Jarrell, 60 Tex. 270; Texarkana & Ft. Smith Ry. Co. v. Terrell, 172 S. W. 742; Moss v. Sanger Bros., 75 Tex. 323, 12 S. W. 619.

Appellant's forty-second assignment of error complains that the verdict of the jury in the sum of $15,000 is excessive.

[7] It is true that this verdict is a large one, but in view of the fact that the undisputed evidence shows that because of his injuries an able-bodied man in the prime of life has been practically deprived of any means of support by manual labor, his sight and hearing were badly injured, he stutters, and cannot use his right arm, which has withered, and his right leg is almost useless, we cannot say that the verdict of the jury is excessive.

For the errors pointed out, the judgment of the district court will therefore be reversed, and the cause remanded for another trial.