YOUNGER BROS., Inc., v. MARINO et al.

No. 11829.

Court of Civil Appeals of Texas. Galveston.

Nov. 21, 1946.

Rehearing Denied Dec. 12, 1946.

Bell, Dyche & Bell, Fulbright, Crooker, Freeman & Bates, and M. S. McCorquodale, all of Houston, for appellant.

Earl Cox, of Houston, for appellees.

GRAVES, Justice.

Mrs. Helen Marino brought suit, individually and as the duly appointed legal guardian for her son Joseph Archer Marino, in the district court of Harris County, Texas, against Younger Bros., Inc., for the death of her husband, Augustine Joseph Marino, who was killed instantly when the truck he was driving collided with a truck operated by an employee of Younger Bros., Inc. Mrs. Marino also sued for the use of plaintiff Joseph Marino, father of her husband. Maryland Casualty Company intervened, by virtue of the fact that it had paid Workmen's Compensation benefits to Mrs. Marino, as that company carried the Workmen's Compensation Insurance for Mr. Marino's employer.

Mrs. Marino individually recovered judgment in the sum of $30,355, and, as guardian for her minor son, recovered judgment in the sum of $5,000. Joseph Marino, the father, failed to recover. Maryland Casu-

alty Company recovered judgment in the sum of $560. Younger Bros., Inc., appealed from such judgment.

Appellant's first two points of error insist that the evidence introduced in the trial, (1) failed absolutely to show whether loss of control of the appellant's truck was due to negligence on the part of its driver; or, if not to that full extent—which would have entitled it to an instructed verdict— then, (2), it was at least entitled to have the jury determine as a fact-issue whether such loss of control was complete, and whether its driver's negligence caused it, as was inquired about in its requested issues Nos. 1 to 5, inclusive, the submission of which to the jury the trial court refused.

Was the body of the evidence so characterized subject to one or the other of such infirmities? To determine that inquiry, this resume of the controlling features thereof, all of which appears to this court to have been from undisputed testimony, is at the outset thus set out:

Rufus Dillard, a passenger in the truck being operated by the deceased Marino, and the only eyewitness to the collision, testified:

That Marino was proceeding in a westerly direction toward Houston on the Beaumont-Houston Highway, at a speed of about 35 miles per hour, as it approached the place of the accident. That the Younger Bros. truck was approaching from the opposite direction, and that, when he first saw it, such truck was about a half mile down the road. That there were no vehicles between the two trucks. That this was about 10:00 o'clock at night. That the approaching truck was going pretty fast, about 40 miles an hour. That, when the approaching truck was about a block away, it commenced to zigzag across the road. That the approaching truck was going back and forth from one side of the road to the other. That when the approaching truck began to go back and forth from one side of the road to the other, and when it was a block away, Mr. Marino said: "Look at that truck coming yonder," and began to pull off on the righthand side of the road, and put on his brakes; that he pulled off the side of the road gradually. That he

applied his brakes gradually; began to slow up gradually, and pulled off to the right at the same time. That Mr. Marino got the truck completely off the highway on to the shoulder, as much as three feet off of the pavement to the right. That it was a Ford truck, with a van type trailer. That, when the oncoming truck was a hundred feet from them it got over on the wrong side of the road and headed right straight for them; it didn't zigzag any more, it headed straight for them. That after it went from one side of the road to the other side a number of times, it then went over, clear over on the lefthand shoulder, when it was about 100 feet from them, and then came straight toward them. That there was a square, head-on collision, and that at the time of the collision the truck Mr. Marino was driving "had done come to a stop; almost completely stopped." That Mr. Marino had stopped almost completely, that his truck was just barely moving. That at the time of the collision the other truck was going about 35 miles per hour, maybe faster. That, as the oncoming truck came closer to him, it seemed to go faster than it did down the highway. That the oncoming truck never seemed to slow up a bit.

C. A. Weirich, a deputy sheriff, who investigated the accident and who arrived soon thereafter and before the vehicles had been moved, testified:

That, when he got to the scene of the wreck, both trucks were on the north side of the highway, off of the pavement. That the tractors, or front ends of the trucks, were approximately 20 feet from the north edge of the concrete. That there was no broken glass, wreckage, or debris of any kind, on the concrete itself; it was on the shoulder. That such wreckage was found on the shoulder on the north side of the highway. That he found tracks on the concrete, and made measurements of such tracks. That he found brake-marks or skid-marks leading to the back of the van type (Marino) truck, such skid-marks being right at the edge of the highway, right on the edge of the pavement, about 4 or 5 feet long, "just where they skidded and made a short turn." That he was present when photographs were taken, and the trucks and

conditions were the same as they were when he got there.

J. C. Rockwell, another deputy sheriff, who went to the scene of the accident immediately thereafter for the purpose of making an investigation, testified:

That he found the two wrecked trucks on the north side of the highway next to the wire fence on the side of the road. That they were on the shoulder of the highway completely off the pavement, no part of either truck being on the concrete. That he found that the flat bedded truck (the Younger Bros. truck) had come from the southern part of the highway on its side and traveled approximately 100 feet on the wrong side of the highway and came completely off of the highway and was on the northerly part of the highway when the collision occurred, from the indications of the tracks at the edge of the highway and the dirt that was torn up at the scene.

The witness Jesse Cordell, who operated the Cordell Brick Company, in front of whose plant the accident occurred, testified:

That he was home in bed when he heard the impact of the two trucks. That it sounded like railroad box-cars hitting together. That this was about 10:00 o'clock at night. That he got up and went out to the scene of the accident. That he found the trucks on the north side of the highway, about 50 or 100 feet down the highway east of where his office was located. That the front end of the van type truck (the Marino truck) was 20 feet or more from the north edge of the concrete in the ditch. That both vehicles were entirely off the concrete.

On such evidence, the jury, in answer to special issues submitted by the court, in material substance found:

"That the driver of the Younger Bros. truck failed to travel on the right-hand side of the highway just before and at the time of the collision, which was a proximate cause of such collision; that such driver failed to travel on the right-hand side of the highway when the road on the left-hand side was not clear and unobstructed for a distance of 50 yards ahead just before and at the time of the collision, which was a proximate cause of the colli-

sion; that the driver of such truck, just before and at the time of the collision, operated such truck on its left-hand side of the center line of the highway, which was negligence and a proximate cause of the collision; that the driver of such truck failed to keep a proper lookout for vehicles on the highway ahead of him just before and at the time of the collision, which was a proximate cause of the collision; that the driver of such truck was operating the same at a greater rate of speed than a person of ordinary prudence would have operated the same under the same or similar circumstances just prior to and at the time of the collision, which was a proximate cause of collision; that the driver of such truck failed to have the same under reasonable control as he approached the place of collision, which was a proximate cause of the collision; that the driver of the truck failed to slacken the speed of such truck as it approached the Beverage truck, which was negligence and a proximate cause of the collision; that the collision in question was not the result of an unavoidable accident; and that the driver of the Younger Bros. truck was not acting under an emergency immediately before the collision in question.

"The jury further found that the deceased Augustine Joseph Marino did not fail to keep a proper lookout; that he was not driving at a dangerous rate of speed; that it was not negligence upon his part to fail to sound his horn; that he was not negligent in failing to apply his brakes to the fullest extent possible, and at the same time drive completely off of the pavement."

This court, upon careful review of the statement of facts, is unable to so appraise the evidence as does appellant, or to differ either with the trial court's conclusion that the issues so submitted to the jury embodied the material ones of fact involved in the cause, or with its further determination upon the motion for new trial before it, that the jury's quoted findings on those issues were sufficiently supported by the testimony.

In other words, it seems to appear that appellant's overall contention upon this feature is, in effect, a two-pronged one; that is, that it was incumbent, in the first instance, upon the appellees to account by

their testimony for the acts of appellant's driver in so operating its truck at high speed on its wrong side of the highway, and in so colliding with Marino's truck which had practically stopped when entirely off the highway, and, in the second place, appellant—notwithstanding there was no testimony in the record at all on the point—was also entitled to have the jury determine in some way the reason for appellant's such unaccountable operation of its own truck.

Appellant cites in support of the first prong of such dual contention, these, among other authorities: Seligman v. Hammond, 205 Wis. 199, 236 N.W. 115; Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36; Griffin Lumber Co. et al. v. Harper, 247 Ala. 616, 25 So.2d 505; Merritt v. Phoenix Refining Co., Tex.Civ.App., 103 S.W.2d 415; Bowers v. Kugler, 140 Neb. 684, 1 N.W.2d 299; State ex rel. Brancato v. Trimble, 322 Mo. 318, 18 S.W.2d 4; Klein v. Beeten, 169 Wis. 385, 172 N.W. 736, 5 A.L.R. 1237.

It offers as upholdings its second prong, these two Texas holdings: Dixie Motor Coach Corp. v. Galvan, 126 Tex. 109, 86 S.W.2d 633; Schuhmacher v. Holcomb, 142 Tex. 332, 177 S.W.2d 951.

It is not thought that these cited holdings from other jurisdictions rule the facts and findings in this cause; to the contrary, the principles and rules established by our Texas courts seem to be directly counter to them, in that they necessarily exclude the application of the cited holdings, upon which appellant so relies; some of them are as follows: Houston E. & W. T. R. Co. v. Boone, 105 Tex. 188, 146 S.W. 533; Bock v. Fellman, Tex.Com.App., 212 S.W. 635; Straus-Bodenheimer Co., et al. v. Marshall, et al., Tex.Civ.App., 91 S.W.2d 865; English v. Miller, Tex.Civ.App., 43 S.W.2d 642; error refused.

■ Such differing holdings by our Texas courts are thought to be correctly epitomized in the appellees' brief herein, to this effect:

"It is firmly established by the decisions in this state, that, when a person has shown by his testimony in a case of this kind the existence of a cause which might produce an accident, and that an accident of that particular character did occur, and where

there is an absence of showing af any other cause, he has made his case for the jury.

"It is further the law in this state that, in a case of this kind, the plaintiff can make his proof solely by circumstantial evidence. For instance, in this particular case, even if there had been no eyewitness to the accident, the appellees would have been entitled to go to the jury solely and alone on the circumstances evidenced by the position and condition of the two trucks involved."

█ To sum up this phase of the cause at bar, in consonance with what our courts have so ruled the law to be upon the legal equivalent of facts like those so appearing here, the vice in appellant's whole approach to its appraisal of this evidence is thought to lie in the fact that it assumed that its driver had not only lost control of its truck, from the time it first came in sight of the appellees' truck until the collision itself, whereas there is no evidence to that effect at all; it could not, therefore, first thus assume that there was such complete loss of control upon its driver's part and, second, conclude that, despite the clear-cut circumstances—indicative of negligence on its own part—shown to have attended this collision, it was the legal obligation of the appellees to account for that loss; in other words, it seems clear to this court that since there was no actual testimony that appellant's driver had been caused to lose control of its truck through negligence on his part, and since it nevertheless unjustifiably assumed that a complete and continuous loss of control by him existed, without showing any circumstances explanatory thereof, that it was neither entitled to an instructed verdict in its favor, nor to the submission of any such issues as it requested to the jury.

It is next urged that the $30,000 damages allowed Mrs. Marino "is grossly excessive, is not supported by the evidence, and is so excessive as to show manifest sympathy, bias and prejudice on the part of the jury."

The most material facts upon the damage-issue were these:

The witness John B. Saragusa, co-owner of the Quality Beverage Company, and the employer of the deceased Augustine Joseph Marino, testified:

That Mr. Marino had been working for his company for about six months prior to his death. That he was employed in the capacity of a truck man and was receiving base pay of $225 per month. That he had known Mr. Marino for ten or fifteen years prior to his death. That Mr. Marino was a very fine boy; that he was honest and a very capable worker. That Mr. Marino's chances of developing into a salesman were very, very good. That he was a very fine boy, had a nice personality that went along with his (the witness') organization. That, in reasonable probability, Mr. Marino's opportunities of becoming a salesman with his organization were very great, because he was a boy that the witness had found, after checking and working with him, to be honest and a very nice boy, who would gradually work into the sales organization of the company. That Mr. Marino would have, in reasonable probability, earned from $5,000 to $6,000 a year as a member of the witness' sales-force; between $5,000 and $6,000 a year.

The plaintiff, Mrs. Helen Marino, testified:

That she was 28 years of age at the time of her husband's death. That at such time her husband was 31 years of age. That her son, Joseph Archer Marino, was 4 years of age at the time of his father's death. That her husband met his death in the collision forming the basis of this suit on July 13, 1945. That she and her deceased husband had only the one child. That she and her minor child were dependent upon Mr. Marino for their support. That she handled all of the money in the family, her husband turning his pay-check over to her. That her husband neither smoked nor drank. That he worked for the lumber company about a year and a half after their marriage and then went to work for the Brown Shipbuilding Corporation, which was in 1941, where he worked for three years, and where he earned close to $400 per month. That during the calendar year 1943, as shown by statement of income tax withheld on wages, which was introduced in evidence, Mr. Marino earned $3,124.66. That when her husband left the shipyard and went to work for the Quality Beverage Company, he made $50 clear a week, with

everything taken out, and was making this at the time of his death.

There was introduced in evidence the American Experience Table of Mortality which sets forth a person 31 years of age has a life-expectancy of 34.63 years, and a person 28 years of age has a life-expectancy of 36.73 years.

Under appropriate issues upon that subject, the jury had assessed Mrs. Marino's damages at $30,000, and the damages for her minor child—which appellant does not contest—at $5,000.

█ If one rule in our jurisprudence with reference to the amounts in monetary damages for deaths caused by negligence has been established, it is that circumstances alter cases. This appellate court, in the facts here obtaining, is unable to see eye to eye with appellant's contention that this award of $30,000 by the court and jury was so excessive as to shock the judicial conscience; indeed, it appears to have been no more than reasonable compensation for the loss Mrs. Marino actually sustained, when the age, life-expectancy, earnings, earning-capacity, and future prospects of increased income, of the deceased husband, are considered.

█ It is true that $30,000 may seem somewhat high when compared to smaller sums approved by our courts in past years as reasonable compensation for losses of somewhat comparable character under the facts thereof; but it is thought that this court may not only take judicial cognizance of the strong showing in the supporting evidence, quoted from this record, but also, as a public prevailing fact, well known to the people at large in this state—that there is now prevalent therein not only a very high cost-of-living, but also a quite low purchasing-power of the dollar. 17 Tex. Jur., page 168, II Judicial Notice & Common Knowledge, pars. 7 and 8; Grice v. State, 142 Tex. Cr.R. 4, 151 S.W.2d 211 at page 216, par. (3); Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167, par. (8), at page 171.

The claim for excessiveness is accordingly overruled.

Appellant's 4th to 8th points, inclusive, assail the trial court's refusal to give it a new trial on these grounds:

(1) The audible weeping of Mrs. Marino in the jury's presence during the argument of her counsel at the trial aroused undue sympathy for her, causing the jury to assess the $30,000 excessive damages.

(2) Because of the inflammatory and improper argument of appellees' counsel to the jury during the trial, in these particulars: (a) Wherein he referred to large gifts made by wealthy people, thereby suggesting the comparative poverty of the Marinos and the wealth of Younger Bros., Inc., and that if the jury did not award the money to the Marinos, a rich widow would eventually give it away; (b) wherein he accused counsel for appellant of trying to cheat a widow, Mrs. Marino; (c) wherein counsel for appellees stated to the jury that counsel for appellant accused his witness of perjury; and (d) wherein counsel for the appellees stated to the jury, outside of the record, that appellant's driver had been drinking.

Appellant's statement under these assignments of improper conduct, both on the part of Mrs. Marino and her counsel, is thus taken from its brief:

"Appellee Mrs. Marino during the argument of her counsel to the jury commenced and carried on an audible and uncontrolled period of sobbing and weeping. It was necessary for her counsel to cease his argument and lead Mrs. Marino from the room. After counsel for appellee had resumed his argument, Mrs. Marino returned to the court room and for some period of time sat with her handkerchief in her hand wiping or dabbing at her eyes.

"During the closing argument of counsel for appellee, the following argument, duly excepted to, was made:

"'These lawyers defending these lawsuits, when a lawyer gets up here and goes to talking about big money like that, they want to have a hemorrhage—they think it is terrible; horrible. Let me give you some little examples from everyday experience. I am not testifying now. I am telling you matters of generality that you

encounter every day; that you read in the newspapers. You read in the newspapers where a wealthy woman gives a million dollars to some college. You don't think about it.

" 'All right. You have encountered situations of this kind; where a man will go out and pay $100 for an oil lease, where he knows they are going to strike oil.'

"During the same argument, counsel for appellee also stated to the jury:

" 'Now, let me show you how much he cheated me out of on this $100 a month. He is willing to give a widow $100 a month, but he can't resist the temptation to cheat her out of some of that.'

"Counsel for appellee also argued to the jury:

" 'I didn't want to hurt Mac's feelings. He is not very careful about mine. He accused my witnesses of perjury, and everything of that kind, and I never did anything like that. I don't think I cast any reflection on a single witness that took the stand.'

"During the same argument, counsel for appellee stated to the jury:

" 'Counsel says it was a bug in the eye that cause the collision. Don't you think it is more probable that it was beer in the stomach, instead of a bug in the eye? I leave it to you.' "

- A large number of authorities were presented under these points, the chief ones being these: Houston & T. C. v. Willie, 53 Tex. 318, 37 Am.Rep. 756; Trinity v. Stewart, Tex.Civ.App., 62 S.W. 1085; Houston E. & W. T. v. McCarty, 40 Tex.Civ. App. 364, 89 S.W. 805; Chicago v. Langston, 92 Tex. 709, 50 S.W. 574, 51 S.W. 331; Kirby v. Youngblood, Tex.Civ.App., 192 S.W. 1106; First National Bank v. Porter, Tex.Civ.App., 204 S.W. 463; Texas & P. R. Co. v. Beezley, 46 Tex.Civ.App. 108, 101 S.W. 1051; Texas Co. v. Gibson, 131 Tex. 598, 116 S.W.2d 686; Vaughan v. Kishieneff, Tex.Civ.App., 63 S.W.2d 1081; Clements v. Wright, Tex.Civ.App., 47 S.W.2d 652; Indemnity Ins. Co. of North America v. Harris, Tex.Civ.App., 53 S.W.2d 631, (error refused); Earl Cox, A Manual on Jury Argument in Texas Courts.

These claims of improper conduct, it is held, did not show either abuse of the trial court's discretion in its refusal of a new trial, or show reversible error here, upon considerations which may be thus outlined.

■ In the first place, the appellant, at the time it was made, objected to only one phase of the challenged jury-arguments of the attorney for the appellees—that is, the portion numbered (a) above, wherein he so referred to large gifts made by wealthy people, etc., which objection was by the trial court promptly sustained, and the jury were instructed not to consider the same;

In the second place, there was no objection to nor request for a similar instruction in connection with any other of the challenged features of the argument, as made by the appellees' counsel;

Third, a careful examination of all the arguments, inclusive of the phase (a) just referred to, convinces this reviewing court that they were each and all of such character, considering the circumstances and the settings under which they were made, that they were susceptible of being cured, either by a withdrawal by the counsel who had made them, or by an instruction of the court, thereby denuding them of any otherwise prejudicial effect;

■ Fourth, since no objection was made to any of the others, and since the instruction not to consider was given as to the first one, which is held to have thereby removed any harm from it, appellant is left in no position to complain, under these well settled authorities: Stanland v. Traders & General Ins. Co., Tex.Sup., 195 S.W.2d 118; King v. Federal Underwriters Exchange, Tex.Sup., 191 S.W.2d 855; Texas & New Orleans v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Missouri K. & T. R. Co. v. McKinney, 136 Tex. 75, 145 S.W.2d 1081; Phoenix Refining Co. v. Morgan, Tex.Civ.App., 178 S.W.2d 175, error refused; Alpine Tel. Corp. v. McCall, Tex.Civ.App., 195 S.W.2d 585; Baker Hotel v. Rogers, Tex.Civ.App., 157 S.W.2d 940, application for writ of error refused, 138 Tex. 398, 160 S.W.2d 522.

It is not deemed essential that further discussion of these arguments be here made, or that any attempt be entered upon to determine what character of argument is or is not in general either improper, or of such a nature that its inherent harmfulness may not be removed by a withdrawal or an instruction of the court. It is simply held that in this instance the arguments here made, when judicially considered, were not of such character as not to have been readily susceptible of being cured; clearly no one of them did nor undertook to give to the jury any information they did not already have, and which, under the law, they were not supposed to have.

■ As concerns the claim for reversal because of Mrs. Marino's having wept in court, it is not considered necessary to do more than quote this much from the bill-of-exceptions the trial court granted in that matter:

"When counsel for plaintiff was delivering his opening argument to the jury and after he had been talking for approximately 10 minutes, and when he was discussing the speed of the appellant's truck and calling attention to the wreckage incident to the collision, the attorney for the appellant called the Court's attention to the fact that the appellee, Mrs. Marino, was weeping. Up until that time the Court had not noticed such weeping, and had not heard an audible sound from Mrs. Marino that would indicate that she was weeping. However, upon noticing Mrs. Marino more closely, the court observed that she had her handkerchief in both hands and was apparently wiping something from the corner of her eyes. At this time, with the permission of the Court, counsel for the appellant called the attention of appellees' counsel to the situation. Whereupon, counsel for appellee stopped his argument, stepped over to Mrs. Marino, and leaned over and talked quietly in her ear. That Mrs. Marino then burst into tears, and did weep and cry aloud. That her counsel then assisted her to her feet, and suggested that she retire from the courtroom and led her out of the courtroom, and returned to the courtroom alone and resumed his argument. That two or three minutes later, Mrs. Marino returned to the courtroom, and at that time appeared composed and free from any tears, and did not cry after that time. That the audible crying did not last over 30 to 45 seconds; not over a minute. The issue on damages had not been discussed at the time of the occurrence above referred to, nor did the incident arise in connection with the damage-issue."

In discussing a similar contention, based upon a like occurrence, the Dallas Court of Civil Appeals, in the recent case of Associated Employers Lloyds v. Groce, Tex.Civ.App., 194 S.W.2d 103, 113, writ of error refused by the Supreme Court "N.R.E.," thus sums up the situation: "* * * naturally under the circumstances she wept, and, in our opinion, no one should deem her conduct out of the ordinary for so doing."

That, in the circumstances here existing, is thought to have likewise been the probable effect upon the jury of Mrs. Marino's weeping, which the quoted bill-of-exceptions, in part only reflects.

When the whole bill is considered, this court is unable to hold that Mrs. Marino's breakdown—in the circumstances therein recited—made any more serious impression upon a jury of ordinary men than that so characterized in the Dallas case.

The remaining points presented in appellant's brief have been carefully considered, but since what has been said above in effect disposes of them adversely to its contentions, they are overruled without specific discussion.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.