D. W. HICKS v. KENNETH C. MATTHEWS

No. A-4394. Decided March 10, 1954.
(266 S.W. 2d Series 846)

178

*V. A. Collins, R. H. Jones,* of Livingston, *Collins, Garrison, Renfrow & Zeleskey* and *Henry H. Rogers,* all of Lufkin, for petitioner.

The trial court erred in overruling defendant's motion for judgment notwithstanding the verdict, since the evidence established that the failure of defendent to take the plaintiff before a magistrate was justified and the Court of Civil Appeals should have so held. Stewart v. Bassey, 150 Texas 666, 245 S.W. 2d 484; Moody v. Kimball, 173 S.W. 2d 270, no writ history; Ex Parte Wright, 138 Texas Crim. Rep., 350, 136 S.W. 2d 212.

*Campbell & Foreman* and *Ross Hightower* and *Z. L. Foreman,* all of Livingston, and *Smith & Lehman* and *J. Edwin Smith,* all of Houston for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

Respondent, Kenneth C. Matthews, brought this suit against petitioner, D. W. Hicks, an officer of the State Highway Patrol, for actual and exemplary damages for an alleged illegal arrest and false imprisonment and for the alleged failure of the petitioner to accord him his legal right to be taken before a magistrate immediately after his arrest. In the trial court, judgment was rendered against petitioner for $10,000 as actual damages and $5,000 as exemplary damages. Upon appeal the honorable Court of Civil Appeals found that the amount awarded as actual damages was excessive to the extent of $9,500 and that the amount awarded as exemplary damages was excessive to the extent of $4,500. A remittitur of those amounts having been filed, the judgment of the trial court was reformed and, as reformed, was affirmed. 261 S.W. 2d 207.

Five special issues were submitted to the jury. Issue No. 2 was submitted conditionally and not answered. Issue No. 4 submitted the question of whether exemplary damages should be

allowed, and issue No. 5 called for a determination of the amount of exemplary damages. The two special issues material to our decision, together with the answers of the jury thereto, read as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that at the time of the arrest·in question neither of the magistrates was in his office, or reasonably available, for the presentment of Kenneth C. Mathews: You will answer this question 'Yes' or 'No.' Answer: No."

"Special Issue No. 3. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably compensate plaintiff, Kenneth C. Matthews, for the actual damages, if any, sustained by him on the occasion in question, as a direct result of the detention and incarceration of plaintiff, Kenneth C. Matthews, without having been carried immediately before a magistrate having jurisdiction of either of the offenses with which he is charged?
"You will answer this question in dollars and cents, if any.
"Answer: $10,000.00."

The record discloses that Special Issue No. 3 as originally prepared authorized the jury to consider the damages sustained by respondent as a result of the arrest, but, in response to objections by petitioner, the court deleted the word "arrest" from the issue and submitted it as disclosed above.

■ We sustain petitioner's contention that the only theory of liability submitted by the special issues above quoted was the failure of petitioner to present respondent before a magistrate immediately after the arrest. Liability for unlawful arrest or false imprisonment is not, in our view, covered by the special issues. We also sustain petitioner's contention that the answer of the jury to special issue No. 1 has no support in the evidence, and that therefore no liability can be predicated against him on the ground that he violated respondent's right to be presented immediately before a magistrate.

Petitioner arrested respondent at approximately 4:00 p.m. on July 3, 1950, for a claimed violation of law growing out of a traffic accident, and took him at once to the county jail and delivered him into the custody of the sheriff. He then drove a Mr. Hayman, owner of a lien on the car involved in the accident, to a garage somewhere in the town of Livingston, and proceeded

on to the courthouse to prepare complaints against respondent. Petitioner shared office space with the justice of the peace in the courthouse and knew that the justice had not been present in his office that afternoon. The county judge was out of the city. When respondent was placed in jail, petitioner requested Deputy Sheriff Holbrook to look for the justice of the peace. Holbrook went at once throughout the downtown area looking for him, and not being able to find him there, he telephoned the justice at his residence. In response to the telephone call the justice came to his office, arriving there just after the petitioner had finished preparing the complaints. The complaints were handed to the justice and at about the same time respondent's attorney appeared and made bond for his client, who was immediately released. The time which elapsed between the placing of respondent in jail and his release on bond was approximately one hour.

■ Section 147 of the Uniform Act Regulating Traffic on Highways, enacted by the 50th Legislature, 1947, Chapter 421, page 967 et seq., brought forward in Vernon's Texas Civil Statutes as Article 6701d, makes it the duty of an officer, under certain circumstances therein named, who arrests a person for any violation of the Act punishable as a misdemeanor, to immediately take the party arrested "before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most accessible with reference to the place where said arrest is made, * * *." It is not clear that any of the circumstances which imposed that duty upon the arresting officer existed in this case, but, granting that one or more of such circumstances did exist, it is our conclusion that the petitioner did not violate his duty in that respect. The word "immediately" is a term of relative signification. Sometimes it is understood to mean instantaneously or without intervention of time, but, as used in most statutes, it is not to be construed so strictly. The law must be given a practical and reasonable application. Accordingly, the word "immediately" is very generally held to mean with due diligence. The accused has the right to be presented without delay, but the question of what is delay must be determined by all the facts and circumstances. Necessarily some time must elapse between the arrest and the presentment before the magistrate. Venable v. Huddy, 77 N.J.L., 351, 72 Atl. 10; Mullins v. Sanders, 189 Va. 624, 54 S.E. 2d 116; State for use of Kelley v. Yearwood, 204 Miss. 181, 37 So. 2d 174; Fouraker v. Kidd Springs Boating and Fishing Club, Texas Civ. App., 65 S.W. 2d 796 (no writ history) ; Haverbekken v. Hollingsworth, Texas Civ. App., 250 S.W. 261 (no writ history) ; Bishop v. Lucy, 50 S.W. 1029 (no writ his-

tory). While courts must safeguard the rights of individuals, they should not impose liability upon peace officers for delays which are reasonable under all the circumstances. The statute does not make it the duty of the officer to take the accused to the office of the justice of the peace when he knows or has good grounds for the belief that the justice is not in his office. It would have served no purpose whatever for the petitioner to have taken respondent to the courthouse before delivering him at the jail.

When he surrendered possession of the prisoner to the sheriff, he at once requested the deputy sheriff to look for the justice of the peace. No time was lost by petitioner in going to his office and preparing the complaints, and no time was wasted by the deputy sheriff in looking for the justice of the peace. It was but natural that he look in town before telephoning the residence. When he did telephone, the justice of the peace came promptly to his office and approved a bond releasing the prisoner. These facts afford no support for a finding that the petitioner violated his duty to the respondent to present him immediately before a magistrate.

■ Having determined that the judgments of the lower courts must be reversed, there remains the question of whether judgment should be rendered here that respondent take nothing or the case be remanded to the trial court. It is the position of petitioner that, since the only ground of liability submitted to the jury was his failure immediately to take the respondent before a magistrate, and since respondent did not request the submission of any special issue on any other ground of liability, he thereby waived his right of recovery upon any other ground under Rule 279, T.R.C.P., and that judgment should therefore be rendered by this court that he take nothing. We cannot adopt that view. The rule is one of procedure only, and the waiver under the rule pertains only to the particular trial involved in the appeal. Ford v. Hackel, 124 Texas 402, 77 S.W. 2d 1043; Adkins-Polk Co. v. Rhodes, Comm. App., 24 S.W. 2d 351; Galveston, H. & S. A. Ry. Co. v. Price, Comm. App., 240 S.W. 524. The only points presented here are directed to the failure of the trial court to render judgment non obstante veredicto. Judgment non obstant veredicto may be rendered by the trial court only in a case where a directed verdict would have been proper. Rule 301, T.R.C.P. A directed verdict would not have been proper in this case, because the pleadings and evidence raised the issue of liability for unlawful arrest. The opinion of the Court of Civil Appeals so holds, and that holding is not challenged in this court.

■ Further, this court, upon reversing the judgment of the trial court, should remand the case for another trial "if it shall appear

that the justice of the case demands another trial." Rule 505, T.R.C.P. This court exercises a wide discretion in determining whether it should render final judgment here or remand the case for another trial. The fact that a peremptory instruction would have been justified does not necessarily mean that the cause should not be remanded to the trial court. Associated Oil Co. v. Hart, Comm. App., 277 S.W. 1043; Texas Employers' Insurance Assn. v. Herring, Comm. App., 280 S.W. 740. The opinion in Associated Oil Co. v. Hart, supra, cites many cases in support of this holding: "It is the rule, where a judgment has been reversed, to remand to the trial court rather than to render, where the ends of justice will be better subserved thereby. Such remanding has often been ordered to supply additional testimony, to amend the pleadings, and even to show jurisdiction."

The case was submitted to the jury and decided by the lower courts on what we conceive to be an erroneous theory of law, and it has been long established as a rule of this court that in such instances we should remand the case rather than render judgment, contrary to that of the trial court. Willims v. Safety Casualty co., 129 Texas 184, 102 S.W. 2d 178. Accordingly, it is ordered that the judgments of both courts below be reversed and the cause remanded to the trial court.

Opinion delivered March 10, 1954.