**STRUCTURAL METALS, INC. et al.**

v.

**Grover IMPSON et al.**

**No. 591.**

Court of Civil Appeals of Texas, Corpus Christi.

April 22, 1971.

Rehearing Denied June 22, 1971.

Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for appellants.

Edwards & DeAnda, William R. Edwards, Joe Longley, Corpus Christi, for appellees.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial that appellees recover from appellants the aggregate sum of $73,930.45. Appellants are Structural Metals, Inc., and Joe Polanco, defendants below. Appellees are Mrs. Ida LeBourveau, joined by her husband Warren N. LeBourveau, and Grover Impson, individually, and Independent Executor of the Estate of Ivah Impson, deceased, plaintiffs below.

The causes of action asserted by appellees arose out of a collision near Tynan, Texas on November 1, 1968, about 8 o'clock P.M., between a truck being driven by Joe Polanco belonging to Structural Metals, Inc., and a car being driven by one J. T. Hall in which Mr. and Mrs. Grover Impson and their daughter, Mrs. Ida Frances Le-Bourveau, were riding as passengers in the rear seat. Shortly prior to the collision both vehicles were traveling in the same direction, generally northeastward, on State Highway 359. Just outside the town of Tynan, Polanco was driving the Structural Metals Truck on its left hand side of the highway and was overtaking and attempting to pass the car driven by Hall, when the car turned to the left in front of the truck toward Farm Road 796 which ran generally in a northwesterly direction and made a "T" intersection with Highway 359 near the point of the collision. Mrs. Impson was killed and Mr. Impson and Mrs. LeBourveau suffered serious injuries as a result of the accident. Hall is not a party to this suit.

The trial court submitted 10 special issues to the jury. Issues 1 through 6 submitted three separate theories of liability relied on by appellees. Issues 1 and 2 inquired whether Joe Polanco drove his vehicle on the left side of the roadway when approaching within 100 feet of the intersection in question and whether such action was a proximate cause of the occurrence in question. Both of these issues were answered favorably to appellees. The jury refused to find in answer to issue 3 that Polanco failed to keep a proper lookout, and issue number 4 involving proximate cause was conditionally submitted and not answered. The jury further refused to find in answer to issue 5 that Polanco failed to give proper warning of his intention to pass the Hall vehicle, and issue 6 involving proximate cause was conditionally submitted and not answered. It thus appears that the jury answers to issues 1 and 2 furnish the only possible basis for liability of appellants to appellees. Issues 7–10 related to damages.

Appellants assert eleven points of error. We will not need to specifically discuss most of them because we have concluded that this appeal depends primarily upon disposition of appellants' point of error number one which reads as follows:

"The trial court erred in failing to submit an issue to the jury inquiring whether Joe P. Polanco's driving on the left side of the roadway, when approaching within one hundred feet of the intersection was negligence, since there was evidence of justification or excuse for the statutory violation."

Appellees have replied to appellants' first point by their first and second counterpoints in substance as follows: (1) That the trial court correctly refused to submit an issue on excused statutory violation where such an issue was not specifically pleaded, but raised only by a general denial, and was not tried by consent of the parties, and (2) defendants presented no evidence of excused statutory violation.

We agree with appellants.

■ We first consider whether there was evidence legally sufficient to raise the issue of excused statutory violation. If there was none, then the question of pleading becomes immaterial. The evidence relating to the issue of excuse or justification for the statutory violation was in substance as follows. Mr. Polanco, Mrs. LeBourveau and Mr. Impson were the only three potential witnesses to the accident. The latter two, who were riding in the rear seat of the Hall car, did not know much about how it actually happened. The testimony of Joe Polanco, Jr., was in substance as follows: He was the driver of a truck belonging to Structural Metals, Inc., on November 1, 1968, when it was in a collision with an automobile being operated by Mr. J. T. Hall. Earlier the same day Polanco had passed through Tynan, on the way to Jim Hogg County. He had been on Highway 359 through Tynan some five or six times in three or four years. He had previously seen the intersection of Farm Road 796 with Highway 359 but shortly before the accident did not recall its exact location with respect to how far it was out of the town of Tynan. Polanco was traveling about 50 to 55 miles per hour as he came into Tynan. It was dark and the truck lights were on. In Tynan, some six'to seven hundred feet ahead of him, the Hall car drove on to the extreme right-hand side of Highway 359 from an intersecting street. At that point in Tynan, Highway 359 was a four-lane road. Mr. Hall drove his car some 30 to 40 miles per hour in the right-hand lane, while Mr. Polanco drove some 35 to 45 miles per hour in the inside lane. When Mr. Polanco reached the point where the solid yellow, no-passing stripe terminated, he honked his horn, put on his turn signal and pulled to the left to pass Mr. Hall's automobile. At this point, the four lanes had narrowed to two lanes, but there were improved shoulders on each side of the main highway. Mr. Polanco had increased speed to pass Mr. Hall's vehicle, and was traveling at about 50 miles per

hour when Mr. Hall also started picking up speed. Mr. Polanco testified that when he pulled out to pass Mr. Hall, he could have completed passing him before reaching the intersection had Mr. Hall not started gaining speed. Mr. Hall continued his vehicle well on the right-hand side of the roadway, at least partially on the shoulder. Mr. Polanco could have passed the Hall vehicle more than 100 feet before the intersection was reached if the Hall vehicle had not speeded up after he commenced passing. When Mr. Polanco had his truck in the left lane, and was some 10 to 20 feet to the rear of the Hall vehicle, it abruptly turned left. No brake lights and no turn signals appeared on the Hall automobile. Mr. Polanco did not realize that the farm road intersection was immediately ahead until he was already less than 100 feet from it. At that time, he was preparing to pass the Hall vehicle; and when it commenced its left turn, Mr. Polanco saw the sign pointing to Farm Road 796 which made a "T" intersection with Highway 359 at that point. Photographs in evidence reflect that the no-passing zone had ended, and that Mr. Polanco was not in a "no-passing" zone at the time of the accident. There was no precise warning of where Farm Road 796 intersected Highway 359 except right at the intersection. Up until the moment when the Hall vehicle started its turn to the left, from its position on the extreme right-hand portion of Highway 359, without signal, Mr. Polanco had no way of realizing that Farm Road 796 went off to the left from Highway 359 at that particular point.

Defendants called B. R. Manning, Jr., as a witness. He testified that he was one of three men who were first to arrive at the scene of the accident. Headlights from both vehicles were on. In addition, the left turn signal on the truck was still working, but there was no turn signal showing on the car. The truck's headlights were on low beam.

The plaintiffs called Mr. John Bentley as an accident reconstruction witness. He pre-pared plaintiffs' exhibit 1, which was a diagram of the scene of the accident. Mr. Bentley computed that the truck was going 53.2 miles per hour when its brakes were applied. He had found that the car was going 21 miles per hour at collision point, and he chose a perfect arc to project back the car from point of collision to a position traveling down Highway 359. Mr. Bentley said on cross-examination that he had chosen the radius of turn for the car by starting from a position exactly in the right-hand lane of Highway 359, and not from the shoulder. He further assumed there was a constant turn with no change in the wheel from the moment the turn started. Mr. Bentley testified to what was shown by photographs, i. e., that the intersection of Farm Road 796 with Highway 359, from the direction Joe Polanco was approaching, was hidden by a house and trees in the front yard of that house. Mr. Bentley also testified that from the time Joe Polanco started reacting to the automobile's movement, there was less than two seconds until impact.

We agree with appellants that there was some evidence to raise the issue of excuse or justification in connection with Joe Polanco operating the Structural Metals truck on the left hand side of the highway under the conditions shown to exist on the occasion in question.

◼ We next consider the question of whether the trial court correctly refused to submit an issue inquiring whether Joe Polanco's driving on the left side of the highway when approaching within 100 feet of an intersection was negligence, when the defendants filed only a general denial and did not specifically plead excused statutory violation.

In support of the contentions made by appellants under their point one they rely primarily on the cases of Phoenix Refining Co., Inc. v. Powell, 251 S.W.2d 892 (Tex. Civ.App., San Antonio, 1952, wr. ref. n. r. e.), and Hammer v. Dallas Transit Co., 400 S.W.2d 885 (Tex.Sup.1966). Appellants

say that the law was correctly proclaimed in *Phoenix* and confirmed and restated in *Hammer*.

In Phoenix v. Powell, supra, both Phoenix, as plaintiff, and Powell, as cross-plaintiff, sought to recover for damages to their respective vehicles. The trial court rendered judgment that neither party recover. Only Phoenix appealed, contending that the jury findings for Powell upon which the judgment was based were supported by mere surmise and conjecture and that consequently the judgment could not stand. Only "no evidence" points were raised. More specifically, Phoenix contended that it was entitled to judgment upon the jury findings that the driver of the Powell truck had driven his vehicle upon his left hand side of the highway, which was a violation of the Penal Code and hence negligence per se, and that such action was a proximate cause of the damages resulting from the collision. In *Phoenix* the jury found among other things in substance that (1) the driver of the Powell truck drove it to his left hand side of the highway as he approached the point of the accident in question, and (1–a) refused to find that such act was negligence, and (3) that such act (inquired about in question No. 1) was a proximate cause of the accident. The court recognized that "When a violation of a criminal statute (suitable for determining civil liability) is shown and nothing more, it is wholly unnecessary to submit the reasonably-prudent-man standard of negligence. The violator of the statute is guilty of negligence as a matter of law." However, the Court went on to hold that "It would logically follow that whenever evidence is submitted tending to show that the violation of the statute was excusable or justifiable or constituted at most a mere technical violation for which civil liability should not be imposed the trial court should submit the reasonably prudent man test in some form. In other words, if the evidence fairly raises the issue of excuse, then, in addition to the question of the commission of a criminal act an issue embodying the reasonably pru-

dent man standard of negligence should be submitted."

The Court summarized the rules as follows:

"1. A violation of a penal statute which contains an appropriate standard for determining civil liability, constitutes negligence as a matter of law.

2. This rule is not inexorable. The party violating the statute may assume the burden of going forward with the evidence and raise an issue as to an excusable violation.

3. If said party bring forward sufficient evidence to raise the issue (and this is a preliminary matter for decision of the trial court), then the issue of negligence determined by the reasonably prudent man standard should be submitted.

4. The burden of proof upon this issue rests with the party asserting negligence for upon him rests the burden of proof as distinguished from the burden of going forward with the evidence."

The Court in *Phoenix* ultimately held that the evidence was sufficient to raise the issue of excusable violation of the statute prohibiting the driving of a motor vehicle on the left hand side of the road, and the issue being raised the jury findings that appellant Phoenix had not met the burden of persuasion properly placed on it by Issues 1–a (negligence) and 28 (unavoidable accident) must stand, and such holdings were fatal to the appeal. The court further stated that because appellant Phoenix, as plaintiff, failed to secure findings upon issues which were necessary to fix liability against the appellee Powell, defendant, that discussion of the issues concerning "emergency" was not necessary. The judgment was affirmed.

In Hammer v. Dallas Transit Company, 400 S.W.2d 885 (Tex.Sup., 1966) the jury found that the traveling of defendant's bus on the wrong side of the road was negligence. It appeared that the bus was out

of control when it crossed the center line, and defendant insisted that this excused the vehicle's presence on the wrong side of the road unless plaintiff established some specific act or omission that caused loss of control. The Supreme Court rejected that contention and held in part as follows:

> "An analogous situation is found in instances in which one relies upon and proves the fact that his adversary violated a statutory standard. The one charged with such a violation may then go forward with the evidence and show excuse or justification for the violation. See Calvert, Special Issues Under Article 6701d, § 86(d), 34 Tex.L.Rev. 971, 977. But it is the one seeking to justify or excuse the violation who has the burden of going forward with the evidence. Younger Bros. v. Marino, 198 S.W.2d 109, 113 (Tex.Civ.App.1946, writ ref. n. r. e.); Jessee Produce Co. v. Ewing, 213 S.W.2d 750 (Tex.Civ.App.1948, no writ); Note, 27 Tex.L.Rev. 866. When he does so, he thrusts upon the other party the burden to obtain a finding that the violation was negligence under the common-law standard. Cunningham v. Suggs, 340 S.W.2d 369, 374 (Tex.Civ.App.1960, writ ref. n. r. e.); Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App. 1952, writ ref. n. r. e.); Fisher v. Leach, 221 S.W.2d 384, 390 (Tex.Civ.App.1949, writ ref. n. r. e.); Taber v. Smith, 26 S. W.2d 722 (Tex.Civ.App.1930, no writ); Hodges, Special Issues Submission in Texas, § 25 (1959). The burden of persuasion on the whole case remains on the one relying upon the statutory violation. See Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85 (1954)."

The Supreme Court in *Hammer* held that the Court of Civil Appeals had applied the wrong rule of law with respect to the one who had the burden to go forward with the evidence to excuse or show the reasons that the defendant's bus was out of control, and the case was remanded to the Court of Civil Appeals for consideration of certain points of Dallas Transit Company (which had been sustained by the intermediate Court without discussion) which asserted that the jury findings were against the great weight of the evidence.

In the recent case of Christy v. Blades, 448 S.W.2d 107 (Tex.Sup.1969) the court was particularly concerned with Art. 6701d, Sec. 86(d), Vernon's Ann.Civ.St., and the plaintiffs' contention that the railroad, if it wished to rely upon the statutory violation as a defense under the circumstances (where the plaintiff's vehicle failed to stop within the statutory stopping distance and there was evidence to support plaintiffs' contention that it was impossible to stop after the train became plainly visible, but impossibility of compliance was not established as a matter of law), had the burden of obtaining a finding that the failure to stop was negligence under the common law standard. The decision is not directly in point but the opinion is helpful to our disposition of the questions presented here. The Court, among other things, held in substance that where a violation of Art. 6701d, Sec. 86(d) was shown (by the establishment of the appropriate facts, either proved conclusively or by way of findings, creating a duty on the part of the motorist to stop, and that he failed to stop or having stopped, proceeded before he could do so safely), the motorist is guilty of negligence as a matter of law in the absence of circumstances amounting to legal justification or excuse; but the holdings just mentioned were prefaced by a holding that "It is also our opinion that when impossibility of compliance is raised but not conclusively shown by the evidence, the motorist must request the submission of proper excuse issues before he will be heard to complain of their omission from the charge." The court made it abundantly clear that its holdings were specifically in connection with Art. 6701d, Sec. 86(d), V.A.C.S., and that the rules in other situations and under different statutes might not be the same. In particular, the court in *Christy* discussed *Hammer* and specifically reiterated (with citation of authorities

omitted) the rules which we have herein-above quoted from *Hammer*, following which the court said:

"The adverse party will need a finding of common-law negligence, of course, if a legal excuse for the violation is established by the evidence as a matter of law or by a finding of fact. *There are also cases in which the existence of excuse vel non can fairly be made to turn on the jury's conclusion as to whether the actor was negligent by the reasonably prudent man standard. This is so, for example, where the statutory requirements are generally known and accepted as the minimum standard of care and the nature of the claimed excuse is such that a technical violation will not constitute negligence if a person of ordinary prudence would have violated the statute under the same or similar circumstances.* Whatever the rule may be in other situations and under different statutes, however, it is our opinion that when a violation of Article 6701d, § 86(d), has been established by findings similar to those quoted above, impossibility of compliance is not properly submitted by requiring the jury to determine whether the motorist exercised ordinary care. It is true, as pointed out by plaintiffs, that the ultimate issue of negligence, defined in terms of the common-law standard, encompasses the existence or nonexistence of excuse. If the jury finds that the motorist was negligent in failing to stop, this would necessarily include a determination either that it was not impossible for him to do so or that his inability to stop was due to his own negligence. But the converse of this statement is not true, because the jury would be free to find that the motorist was not negligent if it concluded *for any reason* that a person of ordinary prudence similarly situated would not have stopped." (Emphasis supplied except for the words "for any reason").

Appellees, in support of their position that a general denial was not sufficient to raise an issue of excused statutory violation and that such issue was required to be pleaded, rely primarily on the case of Rash v. Ross, 371 S.W.2d 109 (Tex.Civ. App., San Antonio, 1963, wr. ref. n. r. e.). Appellees specifically contend that excusable or justifiable violation of a penal statute is an inferential rebuttal issue and that issues which relate to defenses by way of rebuttal are affirmative issues within Rule 279, Texas Rules of Civil Procedure, and that (quoting from that rule in part) " * * * a party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part."

The opinion in Rash v. Ross must be carefully analyzed. Three groups of plaintiffs were there involved and their claims were discussed under section headings of (1) Ritchie Judgment, (2) Guyer Judgment, and (3) Ludeke Judgment. The last-mentioned section has no materiality here. Appellees' reliance here is primarily on the "Guyer Judgment" section of the opinion. The suit arose out of a head-on collision between a vehicle driven by Henry Gorman Ritchie, Sr., and another vehicle driven by Ronald C. Guyer, in which Jean Raymond Ludeke was a passenger. Ritchie and Ludeke were killed and Guyer was injured. Guyer, Ritchie's widow and children, and Ludeke's executor and guardian of his children, all sued the defendants who were contractors for construction of the highway in which area the accident occurred. Primary liability of the defendants was established by jury findings. The trial court awarded all of the plaintiffs a recovery but in doing so disregarded certain jury findings concerning both Guyer and Ritchie, which will be more fully discussed hereinafter. The Court of Civil Appeals held that such findings were improperly disregarded as to Guyer but correctly disregarded as to the Ritchies. Judgment in favor of Guyer was reversed and rendered and that in favor of the Ritchies was affirmed.

We will now specifically consider the "Guyer Judgment" section of the opinion in Rash v. Ross. The jury found that Guyer was contributorily negligent in that (1) he drove his vehicle to the left of the center of the traveled portion of the highway, and, (2) this was a proximate cause of the collision. The Court of Civil Appeals held that these findings should not have been disregarded and they defeated Guyer's recovery. The Court pointed out that Guyer had not pleaded, proved or requested an excuse issue and that not until he filed his motion for judgment notwithstanding the verdict did he ever rely upon excuse as a justification for his violation of the statutory standard of care. We believe that the most material holding as to Guyer is found in the following statement of the court.

"Guyer did not prove excuse. His theory of facing the charge that he was contributorily negligent was by way of a strict denial. In the course of the trial he did not seek to excuse his being on the wrong side of the road; he steadfastly denied that he was anywhere except on the right side. He denied the violation, and stood upon his denial."

We now specifically consider the "Ritchie Judgment" section of the opinion in Rash v. Ross, reading as follows:

"Defendants pleaded that Ritchie was contributorily negligent as a matter of law, in that he violated the statutory standards of §§ 52 and 53, Art. 6701d, Vernon's Ann.Civ.Stats., which required Ritchie to drive on his right side of the road. Lewis v. Reichel, Tex.Civ.App., 256 S.W.2d 216. Ordinarily, negligence per se is submitted in two issues, one that inquires about the conduct claimed to be violative of the statute, and the other about proximate cause. When it is claimed, as Ritchies do, that the statutory violation was excused and excuse is properly raised, statutory negligence is dissolved, and the common law negligence issue is submitted. The court submitted

the issues about Ritchie's contributory negligence in that manner. The jury found, supported by the evidence, that Ritchie drove his vehicle to the left of the center of the traveled portion of the highway immediately before the collision, but that this was not negligence. Although the proximate cause issue was conditionally submitted, the jury answered the issue and found that the act was a proximate cause of the collision.

Defendants contend that the answer which convicted Ritchie of violating the statutory standard, together with the proximate cause answer, established negligence per se. This argument disregards the fact that Ritchies established their excuse for being on the wrong side of the road. Violations of the traffic law, such as driving on the left side of the road in violation of a statute may, in particular circumstances, be excused. Cunningham v. Suggs, Tex.Civ.App., 340 S.W.2d 369; Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892; Killen v. Stanford, Tex.Civ.App., 170 S.W.2d 792; Dixie Motor Coach Corp. v. Swanson, Tex.Civ.App., 41 S.W.2d 436, 438; Taber v. Smith, Tex.Civ.App., 26 S.W.2d 722, 725; Hicks v. Morgan, Tex. Civ.App., 259 S.W. 263; Hodges, Special Issue Submission in Texas, 67.

The evidence in support of excuse justified the submission of the common law negligence issue instead of submitting the case as one of statutory negligence. Ritchie was across the center line, but he was following the road on which the pavement had been scraped away. As he proceeded south, he came upon an unlighted area at a point where there was new pavement. The new pavement angled across the old pavement toward the northwest. The confusing result at night was that at the junction of the scraped road with the new pavement, one could hardly tell where one's side of the road was. A highway patrolman described a shallow ditch which had been built across the road. As one crossed it,

he said that the ditch would pitch a vehicle to the left. There was no center stripe. The evidence supports the submission and finding of Ritchie's justification in being across the center line. The jury in answering, unnecessarily, the proximate cause issue in the affirmative, did nothing more than find that Ritchie's faultless act in driving across the center line caused the accident. The trial court properly gave judgment on the verdict for the Ritchies."

It appears that the holdings of Rash v. Ross in the "Ritchie Judgment" section of the opinion are more in point here than are those contained in the "Guyer Judgment" section thereof. In the instant case Polanco conceded that he was driving the Structural Metals Truck on the left hand side of the highway, but the evidence raised the issue of excuse for his doing so, particularly that which tended to show he did not know and could not readily ascertain the location of the intersection in question under the existing nighttime conditions and because of the conduct of Hall in increasing the speed of his car so that Polanco was at least temporarily required to continue operating his truck on the left hand side of the highway. Appellants here expressly objected to the charge of the court because it failed to submit a separate issue of negligence in connection with Special Issues 1 (which would relate at best only to negligence per se) and 2, inquiring as to proximate cause. In addition, appellants separately submitted and requested a special issue concerning negligence. Appellants' requested issue was refused by the court and their objections to its omission in the charge were overruled. These facts distinguish the instant case from the Guyer portion of Rash v. Ross.

In Hodges, Special Issue Submission in Texas, Section 25, the subject of excused statutory violations under the general subject of inferential-rebuttal issues is discussed in part as follows:

"Ordinarily violation of a penal statute or ordinance constitutes negligence as a matter of law, but particular circumstances may amount to an excuse and deprive the otherwise prohibited conduct of that effect.[107] Some penal statutes and ordinances themselves provide an exception or excuse.[108] Thus driving on the left side of the highway may be justified and hence not negligent as a matter of law if the driver turned to the left because collision seemed imminent,[109] or because of the blowout of a tire.[110] In the same way, driving at a speed in excess of the speed limit might be justified because the driver was a police officer in pursuit of his duties;[111] parking on the highway might be justified because of the lack of space on the right of way;[112] failure to put out flares to mark a vehicle parked on the highway might be justified by lack of time prior to the collision.[113] *Evidence of circumstances excusing the violation, while precluding a finding of negligence as a matter of law, does not preclude the possibility that the conduct may nevertheless constitute common-law negligence. Thus an issue may be submitted asking if the conduct complained of was negligence.*[114] It has been held that this is a sufficient submission of the theory that violation of a penal statute was excused by special circumstances.[115] Such an issue, however, does not submit the rebuttal theory specifically so as to call the jury's attention to it. *Furthermore, such an issue submits the rebuttal theory only from the standpoint of the party contending that negligence existed and not by way of inferential rebuttal thereof in behalf of the party claiming the excuse."* (emphasis supplied)

The subject of pleading and proof in connection with inferential rebuttal issues is discussed by Professor Hodges in Section 17 of his cited work in part as follows:

"Before 1941 the general denial of the defendant or the automatic denial by the plaintiff of the defendant's answer was sufficient pleading to require the submission of an inferential-rebuttal issue

raised by the evidence.[33] This followed logically since the fact submitted by the inferential-rebuttal issue denies or rebuts some element of an opponent's cause of action or defense and hence is put in issue by a denial in pleading. But the general denial gave little notice of inferential-rebuttal theories, and without specific pleading as a guide the court's problem in preparation of the charge was made more difficult. For that reason it was provided by Rule 279 that a party was not entitled to the affirmative submission of an issue raised only by a general denial.[34] *This change did not convert the nature of the defensive matter and make of it an affirmative defense, although occasional cases have so referred to it.*[35] *The burden of proof was not affected by the new Rule; it remains as stated above.*

*"Under a general denial, however, a party may introduce evidence of inferentially rebutting facts and argue such facts to the jury as presenting evidence demanding a negative answer to his opponent's issues submitting the elements of his cause of action or defense.*[36] For example, the defendant can offer evidence that a third person's conduct was the sole proximate cause of plaintiff's injuries, and in his argument to the jury may argue that the issue inquiring if defendant's negligence was a proximate cause of plaintiff's injuries should be answered 'no' because the evidence shows that the third person's conduct was the only cause and therefore that defendant's conduct could not be a proximate cause at all. It is quite clear, however, that special pleading is necessary to the submission of an affirmative issue, and that a general denial will not allow the submission of an inferential-rebuttal issue.*[37] " (Emphasis supplied)

In this case appellees pleaded negligence in seven particulars. Two of the pleaded grounds alleged violations of Section 57, Art. 6701d, V.A.C.S., but one of them (concerning a no-passing zone) was not supported by evidence and was not submitted. The other pleaded ground (Polanco's driving on the left side of the roadway when approaching within 100 feet of the intersection in question) was submitted in special issue No. 1. Appellees alleged that "Joe Polanco was guilty of negligence" as to all of the seven pleaded grounds, and that "Each and all of the above and foregoing acts and omissions which constitute negligence were the proximate cause or causes of the collision in question and of plaintiffs' damages as hereinafter set forth." There was no allegation that appellants should be held liable solely upon grounds that their violation of a statute was a proximate cause of the collision. The effect of appellants' general denial was to contest and deny that any one of the seven grounds relied on by appellees was negligence.

Appellants' position in the trial court and here is not that the issue of negligence should have been submitted as an affirmative defense, but rather is that such issue was required to be submitted (in view of the evidence) as a part of the appellees' case. We agree. We believe that appellants' position is supported by the decisions in *Phoenix* and *Hammer,* by the discussion in *Christy,* and by the discussion in Hodges' work on special issues and the authorities therein cited in support of the text statement. Our holding—that the trial court erred in failing to submit an issue to the jury inquiring whether Polanco's driving on the left side of the roadway within 100 feet of the intersection was negligence, since there was evidence of justification or excuse for the statutory violation—is also supported by a number of cases following *Hammer,* some of which are: Reuter v. Gilbreath, 401 S.W.2d 658 (Tex.Civ. App., Beaumont, 1966, wr. ref. n. r. e.); Black v. Boyd, 410 S.W.2d 6 (Tex.Civ.App., Houston 1st, 1967, wr. ref. n. r. e.); Holland v. Collins, 457 S.W.2d 177 (Tex.Civ. App., Amarillo, 1970, wr. ref. n. r. e.); Sears, Roebuck Company v. Stiles, 457 S. W.2d 580 (Tex.Civ.App., Waco, 1970, wr.

ref. n. r. e.). We have examined the original transcripts in Phoenix Refining Co. v. Powell, supra, Rash v. Ross, supra, and Hammer v. Dallas Transit Co., supra, and do not find any specific pleadings in any of them asserting that the statutory violations therein involved were excused or justified.

Appellants' point one is sustained.

■ Under appellants' point two it is argued in substance that because of the failure of the trial court to submit a separate issue of negligence concerning Polanco's driving on the left side of the roadway when approaching within 100 feet of the intersection in question, that error is presented requiring reversal and rendition of the judgment in favor of appellants. We agree that the judgment must be reversed but have concluded that the cause should be remanded for new trial. Rule 434, T.R.C.P. It is apparent that the case was tried on the wrong theory, that it is necessary that some matter of fact be ascertained (particularly whether Polanco was negligent on the occasion in question under the reasonably prudent man standard), and that the justice of the case demands another trial. See Praetorian Mutual Life Insurance Co. v. Sherman, 455 S.W.2d 201 (Tex.Sup.1970); Texas Sling Company v. Emanuel, 431 S. W.2d 538 (Tex.Sup.1968); Aetna Insurance Co. v. Klein, 160 Tex. 61, 325 S.W.2d 376 (1959); Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846 (1954); Montgomery Ward & Co. v. Randio, 419 S.W.2d 407 (Tex.Civ.App., Beaumont, 1967, wr. ref. n. r. e.).

The judgment of the trial court is reversed and the cause is remanded for new trial.

NYE, Chief Justice (dissenting).

I respectfully dissent. The jury found that the defendant violated Art. 6701d by driving his vehicle on the left side of the roadway when approaching within 100 feet of intersecting Texas Highway 359 and Farm to Market Road 796. The jury further found that this was a proximate cause of the accident in question. The majority of this Court have held that there were issues of fact raised by the evidence which would justify the violation of the statute. Therefore, they reason, the case must be reversed and remanded for a new trial for the sole reason that the trial court did not also require the plaintiffs to submit and prove that the defendant, in violating the statutory duty, was also negligent.

The Texas courts follow the general rule that a violation of a statutory duty resulting in an injury of the type the statute sought to prevent, to one for whose advantage it was enacted, is negligence per se. This requires only a finding that the violation was a proximate cause of the plaintiffs' injuries, to establish a defendant's liability or to bar the plaintiffs' claim as the case may be. This rule is not inexorable. Even with a finding of negligence as a matter of law, such findings may be precluded if there exists only a technical violation of the law, or under the circumstances, an excuse or justification for the violation is proved as an issue of fact.

In an early leading case, the San Antonio Court of Civil Appeals recognized a justification for the violation of a penal article. The Court held that once the statute has been adopted as a standard for determining civil liability, the sufficiency of the evidence of excuse is a preliminary matter for decision of the trial court. Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex. Civ.App.-San Antonio 1952, ref. n. r. e.). Judge Norvell, in *Phoenix* said that " * * if the evidence fairly raises the issue of excuse," the reasonably prudent man standard of negligence should be submitted. In Hammer v. Dallas Transit Company, 400 S.W.2d 885 (Tex.Sup.1966), Judge Pope, speaking for the Court, stated that the one charged with the violation of such a statute may go forward with the evidence and show excuse or justification. If he does so, he thrusts upon the opposition the burden to obtain a finding that the violation constituted negligence or contributory

negligence under the common-law standard. More recently, in Christy v. Blades, 408 S.W.2d 107 (Tex.Sup.1969), the Supreme Court, in an opinion written by Judge Walker, stated that if a legal excuse for the violation of such a statute is established as a matter of law, or by a finding of fact, the other party will then need a finding of common-law negligence.

In the case at bar, I would affirm the judgment of the trial court for the following reasons: (1) It was undisputed that there was no justification or excuse proven as a matter of law or by a separate finding of fact and none was requested. (2) There were no pleadings by the defendant setting up the defense of excuse or justification that would have entitled the defendant to such an issue in any event. (3) The defendant did not assume the burden of going forward with the evidence and prove justification for the violation. (4) Even if there was some evidence (more than a scintilla) the trial court's judgment cannot be reversed for the failure to submit proper excuse issues since the defendant did not request any issues or instructions. Rule 279 and Rule 273, T.R.C.P. (5) The evidence relied upon as an excuse or justification is not such conduct that will in fact or law excuse the statutory violation. This was so determined as a preliminary matter by the trial court who heard the evidence.

The appellants admit the violation of the statute and do not challenge the jury's findings that this violation was a proximate cause of the accident. If the law is now, as the majority opinion states that it is, to the effect that only an issue of fact need be raised to require the appellees to submit and prove the additional issue of common-law negligence, then the facts of this case become extremely important.

The plaintiffs were passengers occupying the rear seat of an automobile that was struck on the side by a truck driven by the defendant as he was attempting to pass the car and the car was attempting to turn off of Highway 359 at the intersection of Highway 359 and FM 796. The car was driven by J. T. Hall. There were five people in the Hall car. Mr. and Mrs. Hall, riding in the front seat, were killed. Mr. and Mrs. Grover Impson and their daughter Ida Frances LeBourveau were riding in the rear seat. Mrs. Impson was also killed. Mr. Impson and his daughter are the plaintiffs here. They were severely injured. It was undisputed that the plaintiffs were not negligent in any way. Their basis for recovery of their damages was based upon the negligent conduct of the defendant truck driver.

The plaintiffs plead, among other things, that the defendant truck driver violated Section 57 of Art. 6701d, V.A.C.S., by driving his truck to the left side of the highway when he was approaching within one hundred feet of and traversing within the intersection of said Highway 359 with FM 796. The case was tried, on the theory that the defendant truck driver had violated the law, that he had failed to keep a proper lookout, and had failed to give a warning that he was passing. The fact that the defendant violated the law was undisputed. This was undisputed by the physical evidence and by defendant's admission to the Justice of the Peace at the scene of the accident. The Justice of the Peace asked the defendant driver: " * * * 'Are you the driver of the truck?' And he said, 'Yes, sir. I am.' I said, 'What rate of speed was you traveling at the time you hit the car?' and he said, 'Somewheres in the neighborhood of fifty or fifty-five miles an hour.' I asked him, I said, 'Didn't you know it was against the state law to pass another vehicle where there is two highways intersect?' And he said, 'Yes, sir.' ' * * * I thought the man heard me blowing my horn, because I was blowing my horn and I thought he heard me blowing my horn.' "

Other undisputed factual evidence was that the defendant driver was familiar with the highway and with the Town of Tynan. He had known of the intersection in question, having observed it on previous oc-

casions. The Town of Tynan is a very small south Texas farm community fronting on State Highway 359. This highway runs east and west. Most of the buildings are on the north side of the highway. The railroad track and elevators are on the south side of the highway. FM796 enters the center of Tynan from the south. It crosses the railroad tracks and intersects with Highway 359 at right angles. It then follows on Highway 359 for approximately three or four blocks to a point where it turns north. It is at this latter point on the east edge of Tynan where the accident took place.

The defendant truck driver was traveling east as he entered the town. He observed the Hall vehicle in which the plaintiffs were riding. It entered Highway 359 from the south ahead of the truck. The Hall vehicle then traveled east on Highway 359 for 1031 feet to where FM796 turns north toward Beeville. The defendant truck driver stated that he entered Tynan traveling fifty to fifty-five miles per hour. He slowed down to some degree, pulled out into the left-hand lane and started passing the Hall vehicle. The Hall vehicle had picked up some speed from the time it entered Highway 359 until it started its turn several blocks east of where they entered Highway 359. When the defendant was within 20 or 30 feet of the rear of the Hall vehicle, but over 100 feet back from the intersection, he determined that the Hall vehicle was going to turn to the left. He applied his brakes, slid some fifty feet and struck the Hall vehicle on its left side causing the injuries and damages complained of.

The defendant's excuses for violating the law are taken from portions of the evidence which he deems most favorable to him. They are: (1) That had the Hall car not speeded up as it entered Highway 359 during the quarter of a mile that it traversed Highway 359, he could have passed the car before it reached the intersection; (2) that there was no yellow stripe on the highway prohibiting him from passing; (3) that it was dark and trees and a house obscured the intersection; (4) that there was actually no indication that FM796 went off to the left from Highway 359 except for some small signs, the one with the arrow was directly opposite the intersection; (5) that although he had traveled over this highway five or six times in the past three or four years, he did not recall the exact location of this particular intersection; and (6) that since the Hall vehicle was on the extreme right-hand side of Highway 359 he did not believe it would turn left.

The defendant did not plead justification or excuse for the violation. He only filed a general denial. When the defendant attempted to bring up excuse, it was promptly objected to by the plaintiffs. No trial amendment was offered during the course of the trial.

Appellant says that these six reasons above set out, raise an issue of fact of excuse anyway, and these reasons excuse or justify the violation of this statute. Therefore, appellant says, the plaintiffs are required to prove that the defendant's act of passing at the intersection was negligence, using the reasonably prudent man test.

These six reasons are either untrue, or they seek contributory negligence of plaintiffs' driver indirectly as an excuse, or they are not an excuse as is contemplated by law. For instance, the fact that there was no yellow line on the pavement at the point where defendant was passing, is no excuse for violating this particular statute. Defendant says, except for the fact that plaintiffs' driver picked up speed, he could have passed. It would be just as logical for the defendant to argue that: If plaintiffs' driver had stopped he would have passed them easily; or if the defendant had been driving his truck faster he could have passed the plaintiffs before he got to the intersection. Again, the fact that defendant forgot that this intersection was there, or the fact that he blew his horn and thought plaintiffs' driver knew he was going to pass them, is no excuse.

There was no blowout on the truck forcing the defendant into the left side of the highway. There was no misleading centerline. He didn't swerve to miss a pedestrian. He says that he thought the signs were too small to properly observe the intersection, yet he was a professional driver and the signs at Tynan were the same size as all other similar signs all over the state of Texas. The photographic evidence, which is undisputed, shows four signs on the south side of the highway, one indicating where FM796 intersects with Highway 359 from the south, two signs as FM796 coincides with 359 for a short distance to the east, and a fourth sign where it leaves Highway 359 to the north. One photograph shows undisputably that the intersection at night was not at all obscured from a point over 100 feet away from the intersection. Another exhibit shows that the house in question was 50 feet north of Highway 359 and 75 feet west from FM796, the place where the accident took place. Actually, the defendant driver thought up a new excuse each time he was asked why he passed the Hall vehicle at the intersection. Once he was asked: "Q Why was it that when he (Hall) started picking up speed, you were not going to be able to pass him, that you didn't slow down and pull in behind him? A Because I thought to my thinking they were going to go straight, I mean, they weren't going to make no left turn or nothing on account of they was way off on the righthand side. Q Well, I thought you were worried about them maybe turning left. A Maybe turning, maybe going straight. Q All right. Now, that being true, is there any reason that you can think of, why you didn't, when they started picking up speed and when you didn't know exactly what they were going to do, why you didn't slow down and get back in on the righthand lane again? A No, sir."

Another time he was asked: "Q Well, if you were two hundred feet away from the intersection and he was picking up speed, then why was it that you didn't get back in the righthand lane? A Because I was already too far out for me to back up."

The defendant driver admitted that he didn't see the signs. He admitted that he knew he was not supposed to pass at the intersection. He was asked the question: "Q Now, at that—prior to that time you had known about Farm to Market Road 796, hadn't you? A Not at that instant. Q Prior to that time? A Prior to that, yes, sir. Q I think you told me that when you saw the Hall car pull out on the Highway 359, you had just forgotten about Farm to Market Road 796 being up there to your left, is that correct? A That is correct. Q And regardless of whether or not there was any yellow stripe on the highway, at an intersection you knew that you were not supposed to pass within a hundred feet of an intersection, didn't you? A Within a hundred feet, yes, sir. Q You knew that? A I knew that, but I just forgotten about it too."

The defendant truck driver was asked why he didn't see the sign and he said he was concentrating on watching the Hall vehicle. "Q Well, you were worried about where the (Hall) car was going. A Yes, sir. Q And you were worried that they might pull to the left? A Yes, sir. Q And you were worried about that before you started passing? A I worried—I was afraid they was going to turn after I seen the signs on that Farm to Market Road. Q Oh, you did see the signs? A After I was within a hundred feet from it."

Another time he was asked whether or not he knew he was violating the law. The question put to him on cross-examination: Q Now, you knew you weren't supposed to be passing in the intersection, didn't you? A I didn't recall it then. Q You didn't? Well, if you had known or remembered that the intersection was there; would you have passed there? A Not after I was a hundred feet from it, no, sir. Q Because at that time you knew that you shouldn't be passing in the inter-

section, right? A Not within a hundred feet, no, sir."

He summarized the reason why he was not watching the signs: "A I was worried they were going to turn right off. I didn't remember about the Farm to Market road that was there. Q All right. A My main reason was the way—the way they were driving on the paved shoulder. Q All right. And of course, if you had remembered about the Farm to Market road you wouldn't have been trying to pass? A I don't think so."

Article 6701d, Sec. 57, is a penal statute. It fixes the standard of care. Its object is to prevent the type of accident that occurred on the occasion in question. The failure to conform to such standard is negligence per se. The statute states: "(a) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

\* \* \* \* \* \*

2. When approaching within one hundred (100) feet of or traversing any intersection or railroad grade crossing;".

The generally accepted view in Texas and elsewhere is that the violation of this type of a statutory duty constitutes negligence as a matter of law. This is the reason that the violation of what the Legislature has prescribed as a suitable precaution, is failure to observe that degree of care which an ordinarily prudent person would observe. When the Legislature regards certain acts as so liable to injure others as to justify their absolute prohibition, the doing of the forbidden act is a breach of duty with respect to those who may be injured thereby. 65 C.J.S. Negligence § 19(3). When a violation of Article 6701d, Sec. 57 has been established by findings similar to those in this case, it is not proper to submit ordinary negligence to determine whether the truck driver exercised ordinary care, absent pleadings and proof of justification. This method of submission urged by the defendant would make the violation nothing more than evidence of negligence to be considered by the jury. Christy v. Blades, supra. In the Christy case the Court stated that there are cases in which the existence of excuse or not can fairly be made to turn on the jury's conclusion as to whether the actor was negligent by the reasonably prudent man standard. This is limited, however, to cases where the statutory requirements are generally known and accepted as the minimum standard of care, and the nature of the claimed excuse is such that a technical violation will not constitute negligence if a person of ordinary prudence would have violated the statute under the same or similar circumstances. But this was not the situation in the Christy case nor in the case at bar. In the Christy case the Court had under consideration Article 6701d, Sec. 86(d) which was also a "Thou shall not" type of statute.

Where a legislative body has acted to declare what shall or shall not be done, the triers of fact no longer determine the negligence or non-negligence of a party by comparison with the conduct of a reasonably prudent man, but whether or not the expressed legislative will has been complied with. If there has been a violation of the legislative will then negligence is established not by comparison, but as a matter of law, absent proof of justification. 45 C.J. 720; 65 C.J.S. Negligence §§ 19(3), 624.

In Hammer v. Dallas Transit Co., supra, the Supreme Court stated that the one charged with such a statutory violation, may then go forward with the evidence and *show* excuse or justification for the violation. But it is the one seeking to justify or excuse the violation who has the burden of going forward with the evidence. For instance, the Court said " \* \* \* The burden was upon the defendant Transit to go forward with the evidence *to prove* not merely its own loss of control *but that the loss of control was excusable."* Again in *Hammer* the Court said that in Phoenix " \* \* \* He *proved an excuse* for being

on the wrong side of the road * * *." (emphasis supplied). The Court, in distinguishing the Dallas Transit v. Tolbert case (337 S.W.2d 617, Tex.Civ.App.1960, ref. n. r. e.) said: "* * * In our opinion Tolbert does not support Transit's contention, because in that case, the one charged with being on the wrong side of the road *proved* that his vehicle *was excusably* out of control. * * *" (emphasis supplied)

The Supreme Court went on to say that when he proves excuse or justification, he then thrusts upon the other party the burden to obtain a finding that the violation was a negligent act under the common-law standard. The Supreme Court in Christy, after quoting the above rules from the Hammer case said, that if a legal excuse for the violation is established by the evidence *as a matter of law or by a finding of fact* then the party will need a finding of common-law negligence. In the case before us there was no excuse established as a matter of law nor was there a request, nor was there a finding of fact justifying the violation. It has been said that the Christy v. Blades case changed the burden upon the party attempting to establish the defense of excuse, from a burden of producing evidence to a burden of persuasion. See 49 Texas Law Review, pp. 175–180.

The defendant's theory in our case was that the plaintiffs, not only had to prove statutory violation and that such act was a proximate cause of the collision, but also the plaintiffs were required to prove that such act was negligence on the part of the defendant. The Supreme Court in Christy rejected this theory. It stated that this method of submission would make the violation nothing more than evidence of negligence to be considered by the jury.

The feeble reasons offered as legal justification to pardon the defendant for his violation of the statutory law do not stand up to the legal justification contemplated by the law. 41 Tex.Law Rev., pp. 104–120; The Role of Criminal Statutes in Negligence Actions, 49 Columbia Law Review 21; Public Wrong and Private Action, 27 Harvard Law Review 317; Sufficiency of Excuse to Warrant Jury Question, 27 Texas Law Review 866; Violation of Statute— Excuse Violation, 25 Tex.Law Review 424; 40 Tex.Jur.2d, Negligence, Sec. 15. There are cases that hold that the violation of a statute while acting in an emergency may be justified, or in order to avoid a hazard or serious danger, so long as such violation is not the product of the maker's own negligence. 34 Texas Law Review 977, see footnotes 14 and 15.

In our case the defendant entered the left-hand side of the road voluntarily. It was his own decision to attempt to pass the Hall vehicle. It was his own forgetfulness that caused him not to remember the intersection in question. It was his own carelessness, by his own admission, that caused him to fail to observe the intersection. It was his own volition to pursue the passing of the Hall vehicle even after he determined in his own mind that he was not sure what the vehicle was going to do. The purpose of Art. 6701d, Sec. 57, is to prohibit the driving on the wrong side of the road when approaching an intersection. It is to protect all persons using the highway at or near the intersection, regardless of which way they are traveling. Martinez v. Hernandez, 394 S.W.2d 667 (Tex.Civ.App.-San Antonio 1965, wr. ref. n. r. e.); Harbert v. Mathis, 230 S.W.2d 380 (Tex.Civ.App.-Eastland 1950). The defendant has not offered a legal excuse for violating the statute that was not the product of his own making.

The defendants do not contend that there was a legal justification as a matter of law. It is undisputed that they sought no special issue or instruction of excuse or justification. Therefore, the trial court's judgment cannot be reversed for the failure to submit a proper excused violation. Rule 279, T.R.C.P.

The judgment of the trial court should be Affirmed.