Grover IMPSON et al., Petitioners,

v.

STRUCTURAL METALS, INC., et al., Respondents.

No. B–2879.

Supreme Court of Texas.

July 26, 1972.

On Rehearing Oct. 18, 1972.

Edwards & De Anda, William R. Edwards and Joe K. Longley, Corpus Christi, Wade & Traylor, Beeville, for petitioners.

Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for respondents.

GREENHILL, Justice.

This action for damages arose out of a tragic highway accident between a truck owned and operated by the defendants, Structural Metals and Joe Polanco respectively, and an automobile in which three people were killed, including Mrs. Impson, and two others were injured. The truck attempted to pass the car within a prohibited distance of a highway intersection. The car turned left into the intersection and was struck by the truck which was attempting to pass the car in the left hand lane. The interests represented by the plaintiffs are those of the passengers in the back seat of the car. No issues of contributory negligence are before us.

A criminal statute prohibits drivers from driving their vehicles on the left hand side of a highway within 100 feet of an in-tersection. The jury found that the defendant driver did this, and that such action was a proximate cause. No issue of negligence was submitted, and this creates the problem before us.

The trial court viewed the violation of the statute, intended as a highway safety measure, as negligence per se; and under the above findings, it entered judgment for the plaintiffs. The Court of Civil Appeals agreed that violation of the statute was negligence per se; but the majority of that court held that since evidence of justification or excuse was introduced, it became the duty of the trial court to submit (and the duty of the plaintiffs to request) a special issue on negligence. In doing so, it followed the rationale of the opinions in Hammer v. Dallas Transit Co., 400 S.W.2d 885 (Tex.1966), and Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892, writ refused, n. r. e., 1952. Instead of rendering judgment for the defendants, however, that court concluded that the case had been tried "on the wrong theory"; and it ordered a new trial. 469 S.W.2d 261. The dissenting justice was of the view, among other things, that no evidence of a legally acceptable excuse or justification for violating the statute was introduced.[1] We agree with the dissent on this point. Accordingly, we reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The pertinent facts of this case are set out in great detail in the opinion of the Court of Civil Appeals. They are repeated, with greater emphasis on the evidence offered as excuses for violation of the statute, in the dissenting opinion.

Under the *Hammer* and *Phoenix* rule, and under the rule of Christy v. Blades, 448 S.W.2d 107 (Tex.1969), the party violating the statute must present

---

1. We do not have before us a statute which, in effect, prescribes only that the driver must exercise ordinary care. See, for example, Section 68(a) of Article 6701d, Vernon's Ann.Civ.St., which provides that no person shall turn his vehicle into a private road or driveway "unless and until such movement can be made with safety."

some legally substantial excuse or justification. As stated by Dean Page Keeton, mere "[o]rdinary care does not necessarily constitute one of the excuses ingrafted by the courts to the legislative standard. Otherwise, the doctrine is meaningless; it would simply be another way of saying that the violation of a statute is negligence per se when the violation would constitute the failure to exercise ordinary care." [2]

Harper & James point out that "There is some merit in the objections to both the negligence per se and the 'evidence of negligence' rules. The negligence per se rule is certainly capable of rigid Draconian administration. But the alternative rule, at the other extreme, may be administered so that juries are empowered to dispense with reasonable statutory requirements in every case *no matter how flimsy the excuse.*" (emphasis ours.) 2 Harper & James, Law of Torts 1001, § 17.6 (1956).

So the problem here is to decide what excuses or justifications are legally acceptable. In *Phoenix,* the excuse was a tire blowout. In *Hammer,* it was that because of the wet streets, the defendant's bus unavoidably skidded out of control. In *Christy,* the contention was that it was simply impossible for the truck driver to stop within the prescribed distance from the railroad track. In none of these cases has this court addressed itself to the legal sufficiency of the excuse.

■ The Restatement of Torts, Second (1965), deals with this problem in a new section, 288A. It states that an *excused* violation of a legislative enactment is not negligence. While the section expressly says that the list of excusable situations given is not intended to be exclusive, it lists five categories. They are:

"(a) the violation is reasonable because of the actor's incapacity;

"(b) he neither knows nor should know of the occasion for compliance;

"(c) he is unable after reasonable diligence or care to comply;

"(d) he is confronted by an emergency not due to his own misconduct;

"(e) compliance would involve a greater risk of harm to the actor or to others."

Under category (a), "incapacity," could come cases where the violator was too young, or did not have the mental capacity, to be charged with negligence. It might include a blind man who unknowingly walks a red light (though he may be contributorily negligent for other reasons), or a driver who is rendered physically incapable because of a heart attack. Under category (b) could come cases where a night driver has a tail light to go out unexpectedly and without his knowledge. Under category (c), "unable after reasonable diligence or care to comply," could come cases involving impossibility, as in Christy v. Blades. Under category (d), "emergency not due to his own misconduct," could come cases in which there is an unexpected failure in the steering or braking system; a blowout of a tire which is reasonably thought to be in good condition; a sudden confrontation with blinding dust or smoke on the highway. It could include driving on the left side of the highway to avoid striking a darting child, and similar situations. Finally, the illustration given by the Restatement for category (e), "greater risk of harm," is one in which the law requires people to walk facing traffic, but due to particular circumstances, it would involve greater risk to walk upon that side. The above are intended merely as illustrations of a principle and are recognized to be dictum here. But we do approve of the general treatment of legally acceptable excuses as set out in the Restatement, Second.

2. Annual Survey of Texas Law, Part 1, Private Law, Torts, 24 Southwestern Law Journal 3 at 18 (1970).

None of the excuses offered by the truck driver here are within the classes of excuse set out in the Restatement, Second, or are even close thereto. The excuses offered are analyzed in detail in the dissenting opinion of the Court of Civil Appeals in this case. 469 S.W.2d 261 at 273 to 275. The driver admitted that he was familiar with the law which prohibits the passing of vehicles within the prohibited area; he admitted that he knew about the intersection in question, having driven that way before, —though he momentarily forgot about the particular location at the time. It was at night, and the sign was small,—but the sign was the same size as others of its kind and was not concealed. There was some testimony that some trees or houses obscured the intersection; and there was testimony that there was no dashed or solid line in the road to indicate "no passing." The driver relied on the fact that as the two vehicles left the town of Tynan, the road narrowed from four lanes to two lanes; i. e., only one lane each way. The car the truck driver intended to pass was being driven partially on the right hand shoulder, and it speeded up as the truck began to pass. The car accelerated from about 35 miles per hour to 40 miles per hour, while the truck was going 40 to 50 miles per hour. There was no testimony that the truck driver could not have dropped back of the car. The matter seems to come down to one or more errors of judgment and the belief that the truck driver could, by sounding his horn, make it safely. The driver said he was watching the car to be passed rather than watching for the sign warning of the intersection,— which he did not see; and he did not anticipate soon enough the left hand turn of the driver of the car.

All of the above matters fall within the realm of ordinary care,—or lack of care. The driver made his move deliberately, with knowledge of the law and with at least notice of the presence of the highway intersection. There was no impossibility, no reason for any particular hurry, no emergency, and no incapacity. The problem of greater risk of harm is not involved. If there was an emergency, it was only after the statutory violation had begun, and was due in large part to his own deliberate conduct.

■ In view of the evidence offered, the trial court correctly determined that there was no evidence offered of any legally acceptable excuse or justification. It was, in law, an unexcused violation. The finding, therefore, that the driver violated the statute intended as a safety measure and the finding of proximate cause entitled the plaintiffs to a judgment.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

GREENHILL, Chief Justice.

The motion for rehearing of the Respondents, Structural Metals, Inc., et al., is granted to the extent set out below.

■ The judgment of this court heretofore entered on July 26, 1972, is set aside. The cause is remanded to the Court of Civil Appeals for that court to pass upon the excessiveness of the verdict. The question of whether the amount of damages awarded in the trial court is excessive is a question of fact over which this court has no jurisdiction. If the Court of Civil Appeals determines that the amount of the verdict is excessive, it shall enter judgment in accordance with the procedure set out in Rule 440, Texas Rules of Civil Procedure. If it determines that the amount of the verdict is not excessive, it shall render a judgment affirming the judgment of the trial court. Pon Lip Chew v. Gilliland, 398 S.W.2d 98 (Tex.1966).